### STATE OF CONNECTICUT *v.* GUS CURCIO
### (11535)

SPEZIALE, C. J., PARSKEY, SHEA, GRILLO and SPADA, Js.

Argued June 2—decision released August 9, 1983

*Jacob D. Zeldes,* with whom were *Thomas E. Minogue, Jr.,* and, on the brief, *Alfred J. Jennings, Jr.,* and *Miriam Berkman,* for the appellant (defendant).

*Donald A. Browne,* state's attorney, with whom, on the brief, was *Richard F. Jacobson,* assistant state's attorney, for the appellee (state).

SPEZIALE, C. J. The defendant has appealed from the trial court's denial of his motion to quash an order for a second grand jury. Because we find that the denial is not a final judgment, the appeal is dismissed.[1]

On February 4, 1982, the Superior Court for the judicial district of Fairfield, upon application by the state's attorney's office for that district, called and impaneled a grand jury pursuant to § 54-45[2] of the General Statutes. The state's attorney then presented a proposed true bill to the grand jury alleging that on September 19, 1981, in Bridgeport, the defendant, Gus Curcio, intentionally aided another in committing murder, in violation of General Statutes § 53a-8 and § 53a-54a (a). After hearing testimony and considering evidence for seven days, the grand jury reported to the court on February 16, 1982, that it found no true

[1] The defendant also claimed error in the trial court's denial of his motion to suppress certain evidence that might be introduced before a grand jury. The denial of a pretrial motion to suppress is purely interlocutory and, therefore, not appealable as a final judgment. *State* v. *Ross*, 189 Conn. 42, 49, 454 A.2d 266 (1983); *State* v. *Grotton*, 180 Conn. 290, 294, 429 A.2d 871 (1980); see *DiBella* v. *United States*, 36 U.S. 121, 131, 82 S. Ct. 654, 7 L. Ed. 2d 614 (1962). Such a denial does not fall within that narrow group of presentence orders that finally determine a claimed right, which are deemed final for appeal purposes. See *State* v. *Seravalli*, 189 Conn. 201, 455 A.2d 852 (1983); *State* v. *Powell*, 186 Conn. 547, 554, 442 A.2d 939, cert. denied sub nom. *Moeller* v. *Connecticut*, 454 U.S. 1097, 103 S. Ct. 85, 74 L. Ed. 2d 80 (1982).

[2] At the time of these proceedings article first, § 8 of the Connecticut constitution provided that "[n]o person shall be held to answer for any crime, punishable by death or life imprisonment, unless on a presentment or an indictment of a grand jury." Section 54-45 of the General Statutes sets forth the procedures whereby a grand jury could be summoned. The grand jury portion of article first, § 8 was repealed by the approval by the voters of article XVII of the amendments to the Connecticut constitution as certified by the secretary of the state on November 24, 1982. General Statutes § 54-45 was thereafter repealed. See Public Acts 1983, No. 83-210, § 3. That act now provides that anyone charged with such a crime on or after May 26, 1983, may not be tried for such an offense unless the court conducts a probable cause hearing pursuant to procedures set forth in the act.

bill. The court then thanked the grand jurors for their attention and dismissed them. The assistant state's attorney immediately informed the court of his intention to seek a second grand jury for the purpose of hearing the charges against the defendant.

On June 7, 1982, the state's attorney applied to the Superior Court for an order "summoning, impaneling and swearing" a second grand jury. The court summoned the grand jury for June 28, 1982. On June 18, 1982, the defendant filed a motion to quash the order for the second grand jury claiming that the original grand jury's return of no true bill barred further prosecution. He claimed, inter alia, that being subjected to a second grand jury investigation would violate: (1) his right to due process and to equal protection under the fourteenth amendment to the United States constitution and under article first, § 8 of the Connecticut constitution; and (2) his right not to be held to answer for a capital offense unless indicted by a grand jury.[3] The trial court denied the defendant's motion to quash, and the defendant has appealed.

At oral argument on this appeal, we raised the question whether the denial of the defendant's motion to quash the order for a second grand jury was a final judgment and we ordered both parties to brief the issue. Because we now decide that the trial court's order is not an appealable final judgment, we do not reach the merits of the defendant's claim and dismiss the appeal sua sponte.

---

[3] Another issue before the trial court was the extent to which the Superior Court may supervise grand jury proceedings. The state first claimed that the ordering of the grand jury was simply a ministerial act on the court's part. At oral argument before this court, however, the state properly conceded that the Superior Court has inherent supervisory power over the grand jury. See State v. Canady, 187 Conn. 281, 283, 445 A.2d 895 (1982).

At oral argument and in their briefs both parties argued that the trial court's order is appealable. Agreement by the parties, however, cannot confer appellate jurisdiction on this court. The right of appeal is purely statutory. It is accorded only if the conditions fixed by statute and the rules of court for taking and prosecuting the appeal are met. *State* v. *Audet,* 170 Conn. 337, 342, 365 A.2d 1082 (1976); *Kennedy* v. *Walker,* 135 Conn. 262, 266, 63 A.2d 589, aff'd, 337 U.S. 901, 69 S. Ct. 1046, 93 L. Ed. 1715 (1948). The statutory right to appeal is limited to appeals by aggrieved parties from final judgments. General Statutes §§ 52-263, 51-197a; see Practice Book § 3000. Because our jurisdiction over appeals, both criminal and civil, is prescribed by statute, we must always determine the threshold question of whether the appeal is taken from a final judgment before considering the merits of the claim. See *State* v. *Seravalli,* 189 Conn. 201, 455 A.2d 852 (1983); *State* v. *Spendolini,* 189 Conn. 92, 454 A.2d 720 (1983); *State* v. *Powell,* 186 Conn. 547, 550, 442 A.2d 939, cert. denied sub nom. *Moeller* v. *Connecticut,* 454 U.S. 1097, 103 S. Ct. 85, 74 L. Ed. 2d 80 (1982); *E. J. Hansen Elevator, Inc.* v. *Stoll,* 167 Conn. 623, 624, 356 A.2d 893 (1975); *Prevedini* v. *Mobil Oil Corporation,* 164 Conn. 287, 291, 320 A.2d 797 (1973).

Adherence to the final judgment rule is not dictated by legislative fiat alone. It has long been this court's policy to discourage "piecemeal" appeals, particularly in criminal proceedings. *State* v. *Kemp,* 124 Conn. 639, 646–47, 1 A.2d 761 (1938); see *State* v. *Seravalli,* supra; *State* v. *Powell,* supra. As the United States Supreme Court has recognized: " 'the delays and disruptions attendant upon intermediate appeal,' which the rule is designed to avoid, 'are especially inimical to the effective and fair administration of the criminal law.' *DiBella* [v. *United States,* 369 U.S. 121, 126, 82

S. Ct. 654, 7 L. Ed. 2d 614 (1962)]." *Abney* v. *United States,* 431 U.S. 651, 657, 97 S. Ct. 2034, 52 L. Ed. 2d 651 (1977), quoted in *State* v. *Seravalli,* supra, 204–205; *State* v. *Powell,* supra, 551.

"The appealable final judgment in a criminal case is ordinarily the imposition of sentence." *State* v. *Seravalli,* supra, 205; *State* v. *Grotton,* 180 Conn. 290, 293, 429 A.2d 871 (1980). In both criminal and civil cases, however, we have determined certain interlocutory orders and rulings of the Superior Court to be final judgments for purposes of appeal. An otherwise interlocutory order is appealable in two circumstances: (1) where the order or action terminates a separate and distinct proceeding, or (2) where the order or action so concludes the rights of the parties that further proceedings cannot affect them. *State* v. *Bell,* 179 Conn. 98, 99, 425 A.2d 574 (1979). The trial court's denial of the defendant's motion to quash the ordering of the second grand jury, measured against these tests, is not a final judgment within the meaning of §§ 52-263 and 51-197a.

To satisfy the first test for finality, one would have to show that the order impaneling the grand jury involves a proceeding separate and distinct from the guilt determining process that follows the state's filing of charges. The history of the grand jury in Connecticut and its statutory authorization both indicate otherwise.

General Statutes § 54-45,[4] since repealed, was in effect at the time of these proceedings. It authorized the Superior Court to summon and impanel eighteen

---

[4] "[General Statutes] Sec. 54-45. WHEN GRAND JURY IS REQUIRED. SELECTING GRAND JURY. ALTERNATE GRAND JURORS. (a) The superior court may, when necessary, order a grand jury of eighteen electors of the judicial district where said court is sitting to be summoned, impaneled and sworn to inquire after and present such offenses as are cognizable by said court. Said court may, in its discretion, order one or two additional electors to

electors of the judicial district to sit as a grand jury. The General Statutes made no provision for the impaneling of grand juries to hear proposed bills of indictment by any means other than Superior Court order. This comported with the common law precept that the grand jury, although not operating as a judicial tribunal, has no existence independent of the court that establishes it. 4 Wharton, Criminal Law & Procedure (12th Ed.) § 1685; 38 Am. Jur. 2d, Grand Jury § 2. "A grand jury is clothed with great independence in many areas, but it remains an appendage of the court . . . ." *Brown* v. *United States,* 359 U.S. 41, 49, 79 S. Ct. 539, 3 L. Ed. 2d 609 (1959), reh. denied, 359 U.S. 976, 79 S. Ct. 873, 3 L. Ed. 2d 843, overruled on other grounds, *Harris* v. *United States,* 382 U.S. 162, 86 S. Ct. 352, 15 L. Ed. 2d 240 (1965).

Furthermore, under the constitutional scheme that existed and was applied here, the grand jury played an integral role in the overall adjudicative process. It

be added to the grand jury as alternate grand jurors. Such alternate jurors shall be sworn separately from those constituting the regular panel and shall not counsel or confer with members of the regular panel as to any matters before the grand jury unless they become a part of the regular panel as hereinafter provided. They shall attend the sessions of the grand jury and shall be seated with or near the members of the regular panel, with equal opportunity to see and hear all matters adduced in the proceedings. If for any reason a grand juror is unable to further perform his duty, the court may excuse him and, if any grand juror is so excused or dies, the court may order that the alternate juror or, if more than one, that one who is designated by lot drawn by the clerk of the superior court shall become a part of the regular panel and the inquiry shall then proceed as though such grand juror had been a member of the regular panel from the beginning of the inquiry.

"(b) No person shall be put to plea or held to trial for any crime the punishment of which may be death or imprisonment for life unless an indictment has been found against him for such crime by a grand jury legally impaneled and sworn, and no bill shall be presented by any grand jury unless at least twelve of the jurors agree to it."

This statute was repealed by Public Acts 1983, No. 83-210, § 3. See footnote 2, supra.

could be summoned and impaneled only after the state's attorney had laid before the Superior Court a proposed bill of indictment charging an identified person with a specific offense. *State* v. *Stepney,* 181 Conn. 268, 272–73, 435 A.2d 701 (1980), cert. denied, 449 U.S. 1077, 101 S. Ct. 856, 66 L. Ed. 2d 799 (1981). The grand jury then would hear testimony concerning the charges. If they found probable cause to believe that the accused had committed the offenses charged, the grand jury then would return a true bill, indicting and formally accusing the defendant. See *Cobbs* v. *Robinson,* 528 F.2d 1331, 1338 (2d Cir. 1976) (construing Connecticut grand jury proceedings); *State* v. *Stepney,* supra. "The basic purpose of our constitutional requirement of indictment by a grand jury is to interpose, between the state and one accused of a crime for which the punishment may be death or life imprisonment, a body of eighteen disinterested persons . . . to determine whether the state has shown probable cause for subjecting the accused to the expense, embarrassment and risk of such a trial." *State* v. *Menillo,* 159 Conn. 264, 275, 268 A.2d 667 (1970). "Their proceedings 'are both "ex parte" and interlocutory; moreover, the grand jury only seeks for a "probable cause." ' " *State* v. *Stallings,* 154 Conn. 272, 280, 224 A.2d 718 (1966). The grand jury proceedings *interposed* between the state's attorney's accusation and the defendant's trial were a constitutionally mandated step in the process of bringing the accused to final adjudication. By no means were they separate and distinct from it.

The second test for finality, where the order on appeal so concludes the rights of the parties that further proceedings cannot affect them, focuses not on the proceeding involved, but on the potential harm to the appellant's rights. A presentence order will be deemed final for purposes of appeal "only if it involves

a claimed right 'the legal and practical value of which would be destroyed if it were not vindicated before trial.' " *State* v. *Powell,* 186 Conn. 547, 553, 442 A.2d 939, cert. denied sub nom. *Moeller* v. *Connecticut,* 454 U.S. 1097, 103 S. Ct. 85, 74 L. Ed. 2d 80 (1982), quoting *United States* v. *MacDonald,* 435 U.S. 850, 860, 98 S. Ct. 1547, 56 L. Ed. 2d 18 (1978). Appealable presentence orders include: the denial of a defendant's motion to dismiss nolled charges on speedy trial grounds; *State* v. *Lloyd,* 185 Conn. 199, 207–208, 440 A.2d 867 (1981); an order denying youthful offender status; *State* v. *Bell,* 179 Conn. 98, 425 A.2d 574 (1979); and a denial of the defendant's colorable double jeopardy claim. *State* v. *Moeller,* 178 Conn. 67, 72, 420 A.2d 1153, cert. denied, 444 U.S. 950, 100 S. Ct. 423, 62 L. Ed. 2d 320 (1979).

The bald assertion that the defendant will be irreparably harmed if appellate review is delayed until final adjudication, however, is insufficient to make an otherwise interlocutory order a final judgment. One must make at least a colorable claim that some recognized statutory or constitutional right is at risk. *United States* v. *Ellis,* 646 F.2d 132, 134 (4th Cir. 1981); see *State* v. *Seravalli,* 189 Conn. 201, 455 A.2d 852 (1983); *State* v. *Spendolini,* 189 Conn. 92, 454 A.2d 720 (1983). The exception to the rule that sentencing is the final judgment in a criminal case is applicable only where we find that a cognizable legal right to which the appellant was plausibly entitled would be lost if appellate review were delayed.

In the instant case, the defendant asserts that he has a right not to be subjected to a second grand jury investigation absent the state's showing of compelling reasons. He analogizes the asserted right to a claim of double jeopardy, claiming its origin in the double jeopardy and due process clauses of the United States

constitution and in General Statutes § 54-45. In essence, the defendant contends that the protections that Connecticut's grand jury system was designed to afford an accused are severely diminished when the court calls a second grand jury after a previous grand jury had returned no true bill. He asserts that the abrogation of that protection violates his right to due process in the same way as would a second trial after an acquittal.

The defendant admits that his claim is not precisely identical to a claim of double jeopardy. By its very definition the double jeopardy clause bars prosecution only if a previous prosecution reached the point at which jeopardy attached. See *Crist* v. *Bretz,* 437 U.S. 28, 98 S. Ct. 2156, 57 L. Ed. 2d 24 (1978); *Abney* v. *United States,* 431 U.S. 651, 97 S. Ct. 2034, 52 L. Ed. 2d 651 (1977). In a jury trial jeopardy attaches when the jury is impaneled and sworn; *Crist* v. *Bretz,* supra, 35; and in a nonjury trial jeopardy attaches as soon as the court begins to hear evidence. *Serfass* v. *United States,* 420 U.S. 377, 388, 95 S. Ct. 1055, 43 L. Ed. 2d 265 (1975); *State* v. *Flower,* 176 Conn. 224, 225–26, 405 A.2d 655 (1978). Thus, the defendant's claim of right clearly fails under a double jeopardy analysis. Even buttressing that analysis with the provisions of § 54-45 under the rubric of due process, as the defendant asks, his claim is no more cognizable. Section 54-45, since repealed, simply authorized the Superior Court to summon a grand jury when one was "necessary." Neither by express terms nor implication did it bestow any right on an accused to be free from going through the grand jury process more than once.[5]

---

[5] We note that Public Acts 1983, No. 83–210, which repealed § 54-45 and established procedures for a pretrial probable cause hearing for all crimes punishable by death or life imprisonment, provides that there is no limit on the number of probable cause hearings that can be held.

It is in this critical respect that the case differs from *State* v. *Lloyd,* supra, and *State* v. *Bell,* supra. In *Lloyd,* General Statutes § 54-46 (now § 54-56b) gave the accused an express right to demand either trial or dismissal, with narrow limitations, when the state proposed to nolle pending charges. That statutory right, when combined with the defendant's claim that a trial would abrogate his speedy trial rights, made the situation one in which a recognized right (i.e., speedy trial or dismissal) would be lost if the appeal were not heard. *State* v. *Lloyd,* supra. Similarly, in *Bell* the appellant demonstrated a statutory right to be adjudged a youthful offender. We found the privacy rights bestowed by the statute to be in danger of irretrievable loss if the case proceeded through public trial and to final judgment before the appeal's merits were considered. *State* v. *Bell,* supra.

The difference between those claims and the one advanced by this defendant is that the statutes involved in *Lloyd* and *Bell* clearly conferred on the appellant some right. In contrast, neither § 54-45 nor any reasonable interpretation of the double jeopardy clause imparts a right not to be subjected more than once to a grand jury inquiry. As such, the impaneling of this grand jury would not deny the defendant any right that could not be vindicated by timely appeal at an appropriate stage of the proceedings. The trial court's denial of the defendant's motion to quash the ordering of the second grand jury is not one of those few presentence orders that we deem final for purposes of appeal. *State* v. *Seravalli,* 189 Conn. 201, 205, 445 A.2d 852 (1983).

Undoubtedly, where defendants make a colorable claim that a trial court proceeding subjects them to double jeopardy, they are entitled to have this challenge heard on appeal before trial. *State* v. *McKenna,* 188

Conn. 671, 672, 453 A.2d 435 (1982); *State* v. *Aillon,* 182 Conn. 124, 126, 438 A.2d 30 (1980); *State* v. *Moeller,* 178 Conn. 67, 420 A.2d 1153, cert. denied, 444 U.S. 950, 100 S. Ct. 423, 62 L. Ed. 2d 320 (1979). But the claim must assert a recognized right that inheres in the circumstances. *United States* v. *Ellis,* 646 F.2d 132, 134 (4th Cir. 1981); *State* v. *Seravalli,* supra, 206–10. Were we to find the trial court's order appealable we would, in effect, inform all criminal defendants that by merely invoking a claim of double jeopardy, speedy trial, or some other bar to judicial action, no matter how implausible or incongruous the claim might be, they could appeal from an interlocutory order. This clearly is beyond the intent of the jurisdictional statutes.

The appeal is dismissed sua sponte.[6]

In this opinion the other judges concurred.

[6] The prosecution has been stayed pending this appeal. Practice Book § 3065. Given the passage of Public Acts 1983, No. 83–210 it is questionable whether grand jury indictment remains the proper procedure. See footnote 2, supra. We take no position on that issue at this time.