PAUL RADZIK ET AL. *v.* CONNECTICUT CHILDREN'S
MEDICAL CENTER ET AL.
(AC 34952)

DiPentima, C. J., and Sheldon and Bishop, Js.

Argued June 3—officially released September 17, 2013

*Michael G. Rigg*, with whom were *Lorinda S. Coon*, and, on the brief, *Donna R. Zito* and *William J. Scully*, for the appellants (defendants).

*Hugh D. Hughes*, with whom, on the brief, were *William F. Gallagher*, *Ruben Honik*, *Kevin Fay* and *Leslie Gold McPadden*, for the appellees (plaintiffs).

*Opinion*

BISHOP, J. The defendants, Connecticut Children's Medical Center (CCMC), Francisco A. Sylvester and CCMC Faculty Practice Plan, Inc., appeal from the trial court's order granting the motion of the plaintiff, Paul Radzik, individually and as the administrator of the

estate of his son, Jonathan Radzik,[1] to compel electronic discovery.[2] The defendants claim (1) that the discovery order constitutes a final judgment and therefore this court has jurisdiction over the appeal, and (2) that the court abused its discretion in permitting the "imaging" of three personal computers used by Sylvester. We conclude that the discovery order does not constitute a final judgment and, accordingly, dismiss the appeal.

The plaintiff alleged the following facts in his amended complaint. Sylvester, a board certified specialist in pediatrics who as a servant, agent or employee of CCMC and CCMC Faculty Practice Plan, Inc., treated Jonathan Radzik, a minor, for Crohn's disease. In the course of such treatment, Sylvester prescribed the drug Remicade, which is administered by intravenous infusion. Jonathan Radzik underwent infusions of Remicade at CCMC and under the care and supervision of Sylvester from April, 2003 to October, 2005. In January 2007, Jonathan Radzik died as a result of Hepatosplenic T-Cell Lymphoma (HTCL).

The plaintiff brought the present action in 2009. In his amended complaint, the plaintiff alleged, inter alia, that when Sylvester prescribed Remicade for Jonathan Radzik, he was aware that: "[T]he manufacturer of Remicade had circulated warnings to the medical community that the use of Remicade had been known to cause fatal T-cell lymphomas in patients who were also receiving azathioprine . . . [and that] the type of lymphoma most commonly associated with Remicade treatment was an aggressive and typically fatal variant" and, further, that he had failed to obtain parental permission to prescribe Remicade for Jonathan Radzik.

---

[1] We refer to Paul Radzik in both capacities as the plaintiff.

[2] In its order, the court permitted the imaging and forensic examination of three computers used by Sylvester as follows: one at his home, one at CCMC and one at St. Francis Research Laboratory.

The amended complaint also alleged two counts of battery.

In 2009, the plaintiff served interrogatories and requests for production on the defendants, which requested, inter alia: The contents of any investigative files or "any other documentary material" which support the allegations in the action and any information regarding Remicade, which any of the defendants have in their possession. At his August 25, 2010 deposition, Sylvester testified that he understood the term "documents" as used in the plaintiff's 2009 interrogatories to include electronic documents, but that he had not searched his e-mail or e-mail archives for information pertaining to Jonathan Radzik, Remicade and/or HTCL.

On September 28, 2010, the plaintiff filed a motion to compel discovery, in which he claimed that his requests for production "most certainly embod[y] all electronic documents in the defendants' possession" and that the defendants have failed to comply with discovery in that they failed to conduct searches for electronic documents stored on the computers of Sylvester and his staff. On October 21, 2010, the plaintiff filed an amended motion to compel discovery. In that motion, the plaintiff stated that despite having requested, via letter dated September 20, 2010, all electronic documents in Sylvester's possession that contain several specified search terms, Sylvester testified, at the resumption of his deposition on October 7, 2010, that he had only searched one of his two computers using a more narrowed search. In this motion, the plaintiff also highlighted Sylvester's testimony at the October, 2010 deposition that he possessed a separate electronic library located at St. Francis Research Laboratory (St. Francis) and that a search of this electronic database had not been conducted. The plaintiff requested that the court order, inter alia, that the defendants conduct a search of Sylvester's work computer,

personal notebook and/or laptop, all memory storage devices and e-mail databases for all electronic documents relating to this action. The plaintiff's request specified sixteen terms to be utilized in the anticipated search. In response, the defendants objected to the plaintiff's motion to compel on the grounds that it included an extraordinary scope and breadth of demands and that any possible connection between Remicade and HTCL was not known to Sylvester or the community of pediatric gastroenterologists at the time Jonathan Radzik was infused with Remicade.

At the November 29, 2010 hearing on the plaintiff's motion to compel, the court posited: "[T]he critical issue which is behind all this attempted discovery . . . is what did Dr. Sylvester know and when did he find it out? And it may turn out to be inadmissible, but . . . it certainly would be discoverable." The court stated that it would permit a limited discovery into Sylvester's computers and asked both parties to "work out a set of search terms that would lead to discovery of anything on [Sylvester's] three computers which would tend to reflect what Dr. Sylvester knew and when he knew it."[3]

The parties were unable to agree. By motion dated January 10, 2011, the defendants filed a brief renewing their objection to the proposed search and requested that this discovery not be permitted. On January 13, 2011, the defendants filed a motion for reconsideration, requesting the court to reconsider its November 29, 2010 order regarding disclosure of information from Sylvester's personal and work computers.

The court held another hearing on the discovery issues on January 24, 2011. The court noted that the privacy concerns of having a third party conduct the

[3] The record reflects that the court's reference to Sylvester's three computers included a computer located in his home, one computer used by Sylvester at St. Francis, and a third used by Sylvester at CCMC.

searches was "enormous" and suggested that staff at CCMC and St. Francis conduct the searches. The court concluded: "I'm not issuing any specific orders that anybody has to do anything today. My prior orders are vacated."

In March, 2011, the defendants filed a supplemental memorandum of law regarding the production of electronic documents. In that motion, the defendants' counsel reported that the parties had reached a partial agreement under which CCMC would conduct a search of Sylvester's e-mail account using certain specified search terms, but objected to the plaintiff's request that any documents found be produced "in their native format with load files containing metadata that describes the history of the electronic document." The defendants' counsel also argued that any attorney-client communications identified by the e-mail search should be automatically excluded and be included in the in camera review.

On March 9, 2012, the plaintiff argued in a motion entitled "Request for Adjudication of Plaintiff's Motion to Compel and Plaintiff's Amended Motion to Compel," that the defendants' unwillingness to produce the requested electronic discovery, among other factors, made it necessary to create copies of the requested computer hard drives at St. Francis and CCMC by imaging them. The plaintiff referenced an affidavit attached to a letter sent to the court by the defendants' counsel dated February 14, 2012, in which the information technology manager at CCMC testified that he had searched Sylvester's e-mail account using agreed upon search terms and found no results; he also testified that CCMC purged its computer systems and e-mail accounts in February, 2006, and again in November, 2006. The defendants filed a memorandum of law in opposition to the plaintiff's request to image, or in other words, to conduct an independent forensic search, of

the computer servers of St. Francis and CCMC, citing privacy concerns such as those included in the regulations promulgated pursuant to the Health Insurance Portability and Accountability Act of 1996 (HIPAA).[4]

On March 19, 2012, the court held another hearing regarding the electronic discovery issues raised by the plaintiff's request. At this juncture, the court did not issue an order, but stated that it would explore the feasibility of appointing a special master responsible for carrying out duties deemed necessary such as protecting the privacy interests of nonparties.

With the matter still in abeyance, the plaintiff filed an additional memorandum of law on March 22, 2012, through which he renewed his request to image the hard drives of computers used by Sylvester. In their responsive memorandum of law, the defendants argued that there was no legal basis for ordering the volume of discovery that would require the services of a special master. The defendants argued that the plaintiff's proposal was "the equivalent of general civil search warrants" to search servers at CCMC for deleted e-mails and search servers at St. Francis for articles from medical literature that Sylvester had gathered. The defendants contended that "the harm of the intrusion sought by the plaintiff is wholly unwarranted" in light of prior searches conducted in response to the plaintiff's discovery requests.

On July 19, 2012, the court issued a ruling on the pending motions regarding electronic discovery, which ruling is the subject of the present appeal. In its written memorandum of decision, the court opined that the nature and extent of Sylvester's knowledge of the alleged link between Remicade and HTCL at the time

---

[4] The Health Insurance Portability and Accountability Act of 1996 was enacted by Congress in Public Law 104-191 on August 21, 1996, and has since been amended and codified in scattered sections of the United States Code.

of the infusions was relevant to the plaintiff's informed consent claim and therefore, that the plaintiff's counsel was entitled to conduct discovery on this issue. The court noted, however, that it was "particularly concerned" with the plaintiff's request that the servers at CCMC and St. Francis be imaged and examined by the plaintiff's forensic consultants, and denied those requests without prejudice. The court ordered the following: "Plaintiff will be permitted to image the hard drives of three personal computers which . . . Sylvester has testified he used at CCMC, at St. Francis and at his home, after which their contents will be forensically examined. . . . The court recognizes the potential implications of the order, particularly for patients whose personal medical information is or may be contained on the computers and for members of Dr. Sylvester's family who have used the computer. In order to minimize such concerns, the court will require that any one who is involved in imaging one or more of the desktop computers or involved in the investigation thereof sign a protective order—to be drafted by the parties—which will set forth the court's expectations regarding confidentiality." The court further ordered that the forensic investigation of the computers be conducted by an independent forensic consultant. The order provided that a "discovery master will be authorized to hire and supervise the forensic consultant who will perform the necessary searches, to maintain the confidentiality of the results, and to report those results to the court." This appeal followed.

We first address whether the discovery order is an appealable final judgment. See, e.g., *State* v. *Curcio*, 191 Conn. 27, 30, 463 A.2d 566 (1983) ("[b]ecause our jurisdiction over appeals . . . is prescribed by statute, we must always determine the threshold question of whether the appeal is taken from a final judgment

before considering the merits of the claim"). We conclude that the discovery order does not constitute an appealable final judgment under *Curcio*.

"[C]ertain otherwise interlocutory orders may be final judgments for appeal purposes, and the courts may deem interlocutory orders or rulings to have the attributes of a final judgment if they fit within either of the two prongs of the test set forth in *State* v. *Curcio*, [supra, 191 Conn. 31]. . . . Under *Curcio*, interlocutory orders are immediately appealable if the order or ruling (1) terminates a separate and distinct proceeding, or (2) so concludes the rights of the parties that further proceedings cannot affect them." (Citations omitted; internal quotation marks omitted.) *State* v. *Fielding*, 296 Conn. 26, 37–38, 994 A.2d 96 (2010). "Unless an order can satisfy one of these two [*Curcio*] prongs, the lack of a final judgment is a jurisdictional defect that necessitates dismissal of the appeal." (Internal quotation marks omitted.) *Palmer* v. *Friendly Ice Cream Corp.*, 285 Conn. 462, 467–68, 940 A.2d 742 (2008).

"With regard to discovery orders, [our Supreme Court] has noted that these orders generally do not satisfy either prong of *Curcio* and that, in order for appellate jurisdiction to be appropriate, a party challenging the validity of a subpoena or discovery order *ordinarily* must have been found in contempt of the subpoena. . . . [Our Supreme Court has] noted, however, that appeals from discovery disputes are more fact specific than would appear at first blush . . . and, accordingly . . . [has] held on several occasions that one may bring an appeal challenging a discovery order without first being held in contempt for failing to comply with such an order." (Citations omitted; emphasis in original; internal quotation marks omitted.) *Woodbury Knoll, LLC* v. *Shipman & Goodwin, LLP*, 305 Conn. 750, 757–58, 48 A.3d 16 (2012).

"[There are] three points salient to determining whether a discovery order could be considered an appealable final judgment. First, the court's focus in determining whether there is a final judgment is on the *order* immediately appealed, not [on] the underlying action that prompted the discovery dispute. . . . Second, determining whether an otherwise nonappealable discovery order may be appealed is a fact specific inquiry, and the court should treat each appeal accordingly. . . . Third, although the appellate final judgment rule is based partly on the policy against piecemeal appeals and the conservation of judicial resources . . . there [may be] a counterbalancing factor that militates against requiring a party to be held in contempt in order to bring an appeal from a discovery order." (Citations omitted; emphasis in original; internal quotation marks omitted.) Id., 760–61.

While recognizing that discovery orders ordinarily are not subject to immediate appellate review as final judgments, the defendants, nevertheless, argue that the particular discovery order in this instance satisfies *Curcio*. With respect to the first prong, the defendants argue that the discovery order is a separate and distinct proceeding and that the forensic imaging likely will capture privileged information of nonparty patients. The defendants argue that they seek to vindicate the rights of those nonparty patients in this appeal.

"The first prong of the *Curcio* test . . . requires that the order being appealed from be severable from the central cause of action so that the main action can proceed independent of the ancillary proceeding. . . . If the interlocutory ruling is merely a step along the road to final judgment then it does not satisfy the first prong of *Curcio*. . . . Obviously a ruling affecting the merits of the controversy would not pass the first part of the *Curcio* test. The fact, however, that the interlocutory ruling does not implicate the merits of the principal

issue at the trial . . . does not necessarily render that ruling appealable. It must appear that the interlocutory ruling will not impact directly on any aspect of the [action]." (Internal quotation marks omitted.) *Abreu* v. *Leone*, 291 Conn. 332, 339, 968 A.2d 385 (2009).

In support of their argument that the first prong of *Curcio* is satisfied, the defendants rely primarily on *Woodbury Knoll, LLC* v. *Shipman & Goodwin, LLP*, supra, 305 Conn. 750. *Woodbury Knoll, LLC* concerned a discovery order directed at a nonparty attorney to produce documents relating to his representation of a client. In that case, the plaintiffs brought a legal malpractice action against the defendants alleging negligent representation. Id., 752. The plaintiffs hired the law firm of Finn Dixon & Herling, LLP (Finn Dixon) to represent them in connection with those proceedings. Id., 753. After the plaintiffs filed the legal malpractice action, the defendants served a notice of deposition and subpoena duces tecum on Finn Dixon's custodian of records, directing the custodian to produce all documents relating to Finn Dixon's representation of the plaintiffs between certain dates. Id. Finn Dixon filed a motion to quash the subpoena claiming that much of the requested material was covered by the attorney-client privilege and the attorney work product doctrine. Id. The court overruled Finn Dixon's objection and ordered compliance. Id., 754. Finn Dixon filed a writ of error challenging the court's discovery order. Id., 755. Our Supreme Court held, relying on *Abreu*, that the discovery order was an appealable final judgment under the first prong of *Curcio* because it terminated a separate and distinct proceeding against a nonparty. Id., 757. The court concluded that "there is no compelling reason to prevent a nonparty attorney from directly appealing from a discovery order on the basis of an asserted privilege, and there are significant considerations that militate against

requiring a nonparty attorney to be held in contempt first." Id., 769.

In *Abreu*, in an underlying action, Karissa Leone, a minor, through her parent and next friend, Marjory Leone, filed a notice of claim with the claims commissioner seeking permission to bring an action against the state and the Department of Children and Families for injuries sustained by Karissa Leone when she allegedly was intentionally pushed into a pole by Geovanny, a minor child who was a ward of the state and who resided with his foster parent, Joseph Abreu. *Abreu* v. *Leone*, supra, 291 Conn. 334 and n.1. In that action, a notice of deposition and subpoena duces tecum was issued to Abreu. Id., 334–35. Abreu filed an independent action in the Superior Court asking the court to quash the subpoena and for a protective order from the deposition on the ground that he was prohibited under General Statutes § 17a-28 from disclosing the information sought regarding his foster child. Id., 335. The Department of Children and Families intervened as party plaintiff in Abreu's action. Id. The trial court issued a decision allowing the deposition with certain qualifications; the deposition was held and Abreu refused to answer certain questions thought to be in violation of § 17a-28. Id., 335–36. The parties filed cross motions, seeking either to compel or to avoid disclosures. Id., 337. The court ordered Abreu to answer the disputed questions. Id. The Department of Children and Families appealed. Id. Our Supreme Court concluded that the court's decision regarding the discovery order constituted a final judgment under the first prong of *Curcio*. Id., 338. The court reasoned that the trial court's discovery order constituted a separate and distinct proceeding because Abreu was not a party to the underlying action, he would not have the right to appeal from that proceeding, and further that the Department of Children and Families

may not have a right of appeal from the underlying action before the claims commissioner. Id., 349.

In both *Abreu* and *Woodbury Knoll, LLC,* the discovery orders were directed at nonparties. The order in the present case was not directed at nonparties; nor did it include permission for the discovery master to publish or otherwise disseminate confidential information of nonparty patients. Rather, the purpose of the order was to uncover information pertaining to this action regarding Jonathan Radzik, Remicade and Sylvester subject to further order of the court based on its anticipated in camera inspection of information gleaned from the computer searches. Specifically, the order provided protections for any information regarding nonparties contained in the three computers at issue by having a discovery master oversee the forensic consultant's imaging of the computers and then subjecting the results of the forensic investigation to an in camera review before any dissemination.

Additionally, the record reflects that the issues at hand involve a discovery dispute between parties in ongoing litigation and do not constitute a separate and distinct proceeding. "A party to a pending case does not institute a separate and distinct proceeding merely by filing a petition for discovery or other relief that will be helpful in the preparation and prosecution of that case." *Ruggiero* v. *Fuessenich,* 237 Conn. 339, 345–46, 676 A.2d 1367 (1996). We, therefore, conclude that the first prong of *Curcio* is not satisfied.

With respect to the second prong of *Curcio,* the defendants argue that the court's order concludes Sylvester's right against unreasonable searches and seizures under the fourth amendment to the United States constitution and the privacy rights of nonparty patients so that further proceedings cannot affect them. We disagree and conclude that the second prong of *Curcio* is not satisfied.

"The second prong of the *Curcio* test focuses on the nature of the right involved. It requires the parties seeking to appeal to establish that the trial court's order threatens the preservation of a right already secured to them and that that right will be irretrievably lost and the [parties] irreparably harmed unless they may immediately appeal. . . . Thus, a bald assertion that [the appellant] will be irreparably harmed if appellate review is delayed until final adjudication . . . is insufficient to make an otherwise interlocutory order a final judgment. One must make at least a colorable claim that some recognized statutory or constitutional right is at risk. . . . In other words, the [appellant] must do more than show that the trial court's decision threatens him with irreparable harm. The [appellant] must show that that decision threatens to abrogate a right that he or she then holds. . . . Moreover, when a statute vests the trial court with discretion to determine if a particular [party] is to be accorded a certain status, the [party] may not invoke the rights that attend the status as a basis for claiming that the court's decision not to confer that status deprives the [party] of protections to which [it] . . . is entitled. For an interlocutory order to be an appealable final judgment it must threaten the preservation of a right that the [party] already holds. The right itself must exist independently of the order from which the appeal is taken. Whe[n] a [discretionary] decision has the effect of not granting a particular right, that decision, even if erroneous, does not threaten the [party's] already existing rights." (Citations omitted; emphasis omitted; internal quotation omitted.) *Hartford Accident & Indemnity Co.* v. *Ace American Reinsurance Co.*, 279 Conn. 220, 226–27, 901 A.2d 1164 (2006).

The defendants have claimed, under the second prong of *Curcio*, that the trial court's order threatened the preservation of a right secured to them which would be irretrievably lost short of immediate appellate

review. We disagree. The court ordered that the forensic investigation "be conducted by an independent forensic examiner [who] . . . shall be employed and supervised by a court-appointed discovery master. . . . The discovery master will be authorized to hire and supervise the forensic consultant who will perform the necessary searches, to maintain the confidentiality of the results, and to report those results to the court." As noted previously in this opinion, the court's order does not provide for dissemination of the forensic imaging results. Rather, the disclosure under the order is limited to an in camera inspection. The order provides that a discovery master, an agent of the court, oversee the forensic imaging and that the forensic consultant perform the necessary searches. The order further provides for the results of the searches to be submitted to the court for an in camera review before any dissemination. Because the order does not provide for dissemination or publication of the forensic imaging, the rights of the defendants are not irretrievably lost and may never be compromised at all should the court, based on its own review, make such a determination.[5] Because we conclude that the discovery order is not a final judgment, it is not subject to this court's review.

The appeal is dismissed.

In this opinion the other judges concurred.

---

[5] We need not and do not decide, at this juncture, whether an order permitting the dissemination or publication of the forensic imaging or search results would result in a final judgment.