******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

MICHAEL ROBINSON ET AL. *v.* V. D.*
(SC 20731)

Robinson, C. J., and McDonald, D'Auria, Mullins, Ecker,
Alexander and Prescott, Js.

The plaintiffs' motion to dismiss the defendant's appeal from the trial court's denial of his special motion to dismiss, filed pursuant to General Statutes § 52-196a, having been presented to this court, it is hereby ordered that the plaintiffs' motion is denied, and the case is transferred to the Appellate Court for further proceed-ings according to law.

May 2, 2023

ROBINSON, C. J., with whom McDonald, Mullins and Prescott, Js., join. The defendant, V. D., appealed from the order of the trial court denying his special motion to dismiss, pursuant to the anti-SLAPP[1] statute, General Statutes § 52-196a,[2] the action brought by the plaintiffs, Michael Robinson and Mary Robinson. The plaintiffs now move to dismiss this appeal for lack of subject matter jurisdiction and, specifically, for lack of an appealable final judgment.[3] In response to the plaintiffs' motion, the defendant contends that the legislature's inclusion of "interlocutory appeal" language in subsection (d) of § 52-196a, the statute's legislative history, and public policy all favor an implicit right to an immediate appeal, and the defendant further asserts that the denial of a special motion to dismiss is an appealable final judgment under the standard set forth in *State* v. *Curcio*, 191 Conn. 27, 31, 463 A.2d 566 (1983). For the reasons set forth in the companion case that we also decide today, *Smith* v. *Supple*, 346 Conn.     ,     A.3d     (2023), we conclude that a trial court's denial of a colorable special motion to dismiss under § 52-196a is an immediately appealable final judgment under the second prong of *Curcio*. We further conclude that the record demonstrates that the defendant has presented a colorable claim that he is entitled to a right to avoid litigation under our anti-SLAPP statute. Accordingly, we deny the plaintiffs' pending motion to dismiss this appeal for lack of a final judgment and transfer the case to the Appellate Court for further proceedings according to law.

The record reveals the following relevant facts and

procedural history, which are undisputed for purposes of the present appeal. The parties are civilian employees of the United States Coast Guard (Coast Guard). Michael Robinson works as a locksmith at the United States Coast Guard Academy in New London (academy) and previously served as an assistant coach for the academy's skeet shooting team. Mary Robinson works as a human resources specialist at the Coast Guard headquarters. The defendant is employed as a carpenter/mason at the academy and, in 2019, was temporarily promoted to the new position of construction control inspector.

In late 2019 or early 2020, after applying for the full-time, permanent construction control inspector position, the defendant was informed that he had not been selected for the position. The defendant then resumed his job as a carpenter/mason. Thereafter, the defendant filed a formal, written grievance through his union representative and alleged that the plaintiffs were involved in "a 'quid pro quo' arrangement" with the candidate selected for the position and the official who had selected the candidate. The defendant also alleged that he was denied the position, in part, "because of his known affiliation with the union . . . ."[4] A hearing took place, at which, the plaintiffs contend, the defendant made certain statements consistent with the allegations in the written grievance. Administrative officials with the Coast Guard subsequently investigated both of the plaintiffs and cleared them of any wrongdoing.

Thereafter, in June, 2020, the parties attended a competitive shooting event at a gun club in Burrillville, Rhode Island. After the event was over, Michael Robinson and the defendant had a verbal altercation in the parking lot, during which they exchanged certain insults. Thereafter, the defendant served an application for a protective order on Michael Robinson. A hearing took place in the Superior Court, which dismissed the application.

In December, 2020, the plaintiffs filed the present action against the defendant, alleging in their complaint that the defendant made false accusations against them on numerous occasions, namely, in the union grievance, during the proceedings which resulted from it, in the application for the protective order, and during the hearing that took place in the Superior Court on the protective order application. The plaintiffs alleged defamation, invasion of privacy by false light, common-law vexatious litigation, vexatious litigation under General Statutes § 52-568, and intentional and negligent inflic-

tion of emotional distress.

In January, 2021, the defendant filed a special motion to dismiss, pursuant to § 52-196a, arguing that the plaintiffs' allegations in this action arose from the exercise of his rights of free speech, to petition the government, and to associate as a member of a labor union under the Connecticut constitution and the first amendment to the United States constitution. The defendant also alleged, among other defenses, that the plaintiffs' action violated public policy and that his statements were immune from the defamation claims, as they arose during judicial or quasi-judicial proceedings.

The plaintiffs opposed the motion, and, following a hearing, the trial court denied the special motion to dismiss. The court found that the defendant's conduct as alleged in the complaint was not protected under § 52-196a because it addressed private concerns, rather than a "matter of public concern," as defined in subsection (a) (1) of the statute.[5] The court further concluded that the defendant's conduct during the work related grievance process was personal in nature because it related to his employer's denial of the defendant's promotion and did not address the general practices of the employer. As such, the court determined that the defendant's conduct during that process was not related to a matter of public concern under "the government, zoning and other regulatory matters" category of the definition. General Statutes § 52-196a (a) (1) (C). In addition, the trial court found that the defendant's actions did not relate to a matter of public concern under the "public official or public figure" category; General Statutes § 52-196a (a) (1) (D); because the defendant had failed to establish that the plaintiffs' positions gave them "substantial control or responsibility over governmental affairs or that there was a significant public interest in either position that went beyond the general interest in all public sector employees."[6] Accordingly, the court concluded that the defendant had failed to meet his burden of showing, by a preponderance of evidence, that the complaint was based on the exercise of his right of free speech, to petition the government, or of association.

The defendant appealed from the trial court's decision to the Appellate Court in April, 2021, where the plaintiffs filed a motion to dismiss the appeal for lack of a final judgment. Thereafter, the defendant filed a motion to stay the proceedings until this court decided *Pryor* v. *Brignole*, 346 Conn.    ,    A.3d    (2023). The Appellate Court granted the motion for a stay on

September 29, 2021, without ruling on the plaintiffs'
motion to dismiss. In July, 2022, this court transferred
this appeal to itself pursuant to Practice Book § 65-1
and ordered the parties to address in their appellate
briefs "only the threshold jurisdictional issue of
whether the denial of a special motion to dismiss filed
pursuant to . . . § 52-196a is an appealable final judg-
ment . . . ."[7]

The primary issue raised by the plaintiffs' motion to
dismiss this appeal—namely, whether a trial court's
denial of a special motion to dismiss under the anti-
SLAPP statute can constitute an appealable final judg-
ment—is controlled by *Smith* v. *Supple*, supra, 346
Conn.    . In that case, we examined relevant statutory
text, legislative history, and analogous laws from our
sister states and concluded that our "anti-SLAPP statute
affords a defendant a substantive right to avoid litiga-
tion on the merits . . . ." Id.,    ; see id.,    . We then
continued to conclude that, in cases in which a defen-
dant can assert a colorable claim that a trial court's
denial of a special motion to dismiss under that statute
has placed that particular right at risk, an immediate
appeal may be taken pursuant to the second prong of
*State* v. *Curcio*, supra, 191 Conn. 31. See *Smith* v. *Sup-
ple*, supra,    ; see also *Sena* v. *American Medical
Response of Connecticut, Inc.*, 333 Conn. 30, 41, 213
A.3d 1110 (2019) ("[a defendant] must make at least
*a colorable claim* that some recognized statutory or
constitutional right is at risk" (emphasis added; internal
quotation marks omitted)).

Application of that standard to the present case
requires us to consider whether the defendant has
asserted a colorable claim to the protections afforded
by the anti-SLAPP statute. In particular, we must deter-
mine whether the defendant has asserted a colorable
claim that his actions, as alleged in the plaintiffs' com-
plaint, are based on his right of free speech, to petition
the government, or of association.

We conclude that the defendant has asserted a color-
able claim that at least some of the statements forming
the basis of the plaintiffs' complaint were based on
the defendant's exercise of his right to petition the
government, as contemplated by the anti-SLAPP stat-
ute. "Right to petition the government" is defined in
relevant part as "communication in connection with an
issue under consideration or review by a legislative,
executive, administrative, judicial or other governmen-
tal body . . . ." General Statutes § 52-196a (a) (3) (A).
A party seeking protection under the statute must show,

by a preponderance of the evidence, that the exercise of that right is in connection with a "matter of public concern," as defined in § 52-196a (a) (1). See footnote 5 of this opinion. Courts have found that "mixed questions of private and public concerns" may be protected under the first amendment and that "the fact that a statement evolves from a personal dispute does not preclude some aspect of it from touching [on] matters of public concern." *Morgan* v. *Milford*, 914 F. Supp. 21, 23 (D. Conn. 1996).

The defendant presented evidence before the trial court that his actions related to a matter of public concern because they (1) arose from a collective bargaining agreement between the Coast Guard and the American Federation of Government Employees, Council 120, to which the defendant belongs, and (2) related to improprieties in the hiring process at the academy that went beyond his own personal position, specifically, that Coast Guard hiring officials disfavor persons with a union affiliation when hiring.

On the basis of our review of the record and the plain meaning of the definition of "right to petition the government," we conclude that the defendant has at least a superficially well founded claim that some of his statements, particularly those relating to the grievance process, qualify as communications relating to an issue under consideration by a governmental body, namely, the Coast Guard. See *Stellmaker* v. *DePetrillo*, 710 F. Supp. 891, 893 (D. Conn. 1989) (public school teacher's grievance was protected under first amendment from retaliation by public officials because "[the] grievance was filed pursuant to a procedure established through collective bargaining" and thereby invoked his "right to . . . petition a government[al] body, the [b]oard of [e]ducation"); see also *Noble* v. *Hennessey*, Superior Court, judicial district of New London, Docket No. KNL-CV-20-6045166-S (January 12, 2021) (allegedly defamatory grievance filed with quasi-judicial body, Statewide Grievance Committee, fell under purview of petitioning government for purposes of anti-SLAPP statute).

In addition, the defendant has asserted a colorable claim that his statements during the grievance process relate to a "matter of public concern." Although these statements evolved from a personal dispute between the parties, the statements could conceivably be of concern to the general public because the allegations related to hiring practices within a governmental entity. In particular, the defendant's speech touches on the possible existence of anti-union sentiment within the

academy and quid pro quo arrangements between management officials as it relates to hiring. Therefore, the defendant has at least a superficially well founded claim that his conduct concerns not only him, but others at the academy and the general community at large.[8]

Accordingly, we conclude that the defendant has asserted a colorable claim to a right to avoid litigation under our anti-SLAPP statute. On the basis of the record before us, we conclude that the trial court's denial of the defendant's special motion to dismiss filed pursuant to § 52-196a constitutes an appealable final judgment under *Curcio*.

The plaintiffs' motion to dismiss this appeal for lack of a final judgment is denied, and, pursuant to Practice Book § 65-1, the case is transferred to the Appellate Court for further proceedings according to law.

In this opinion McDONALD, MULLINS and PRESCOTT, Js., concurred.

* In accordance with federal law; see 18 U.S.C. § 2265 (d) (3) (2018), as amended by the Violence Against Women Act Reauthorization Act of 2022, Pub. L. No. 117-103, § 106, 136 Stat. 49, 851; we decline to identify any person protected or sought to be protected under a protection order, protective order, or a restraining order that was issued or applied for, or others through whom that person's identity may be ascertained.

[1] "SLAPP is an acronym for strategic lawsuit against public participation . . . ." (Internal quotation marks omitted.) *Lafferty* v. *Jones*, 336 Conn. 332, 337 n.4, 246 A.3d 429 (2020), cert. denied,     U.S.     , 141 S. Ct. 2467, 209 L. Ed. 2d 529 (2021).

[2] General Statutes § 52-196a provides in relevant part: "(b) In any civil action in which a party files a complaint, counterclaim or cross claim against an opposing party that is based on the opposing party's exercise of its right of free speech, right to petition the government, or right of association under the Constitution of the United States or the Constitution of the state in connection with a matter of public concern, such opposing party may file a special motion to dismiss the complaint, counterclaim or cross claim.

* * *

"(d) The court shall stay all discovery upon the filing of a special motion to dismiss. The stay of discovery shall remain in effect until the court grants or denies the special motion to dismiss and any interlocutory appeal thereof. Notwithstanding the entry of an order to stay discovery, the court, upon motion of a party and a showing of good cause, or upon its own motion, may order specified and limited discovery relevant to the special motion to dismiss.

* * *

"[e] (3) The court shall grant a special motion to dismiss if the moving party makes an initial showing, by a preponderance of the evidence, that the opposing party's complaint, counterclaim or cross claim is based on the moving party's exercise of its right of free speech,

right to petition the government, or right of association under the Constitution of the United States or the Constitution of the state in connection with a matter of public concern, unless the party that brought the complaint, counterclaim or cross claim sets forth with particularity the circumstances giving rise to the complaint, counterclaim or cross claim and demonstrates to the court that there is probable cause, considering all valid defenses, that the party will prevail on the merits of the complaint, counterclaim or cross claim. . . .”

[3] The defendant appealed from the decision of the trial court to the Appellate Court, and we subsequently transferred the appeal and the pending motion to dismiss to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

[4] In their complaint in this action, the plaintiffs specifically contended that the defendant falsely alleged in the grievance that he was “unfairly treated because of his known affiliation with the union” and that “[m]anagement favors persons who do not affiliate with the union . . . .”

[5] “Matter of public concern” is defined as “an issue related to (A) health or safety, (B) environmental, economic or community well-being, (C) the government, zoning and other regulatory matters, (D) a public official or public figure, or (E) an audiovisual work . . . .” General Statutes § 52-196a (a) (1).

[6] As to the defendant’s statements in the application for a protective order and his conduct during the proceedings that resulted therefrom, the trial court concluded that the application and the proceedings were inherently personal in nature.

[7] We subsequently granted the application of the American Civil Liberties Union Foundation of Connecticut (ACLU) to file an amicus curiae brief in support of the defendant’s contention that a denial of a special motion to dismiss under the anti-SLAPP statute is an appealable final judgment.

[8] Because we conclude that the defendant has asserted a colorable claim under the right to petition the government for his statements during the grievance proceedings, we need not decide whether the statements alleged in the plaintiffs’ complaint also fall within the statutory definitions of “right of free speech” and “right of association.” See General Statutes § 52-196a (a) (2) and (4). Ultimately, we leave it to the appellate court reviewing the merits of the defendant’s appeal to determine whether the trial court, in fact, incorrectly

concluded that the defendant had not met his initial burden under § 52-196a (e) (3).