## THE AMERICAN OIL COMPANY v SUHONEN

### OPINION OF THE COURT

1. CONTEMPT—COURT ORDERS—PAYMENT OF MONEY—EXECUTION—
   STATUTES.
   Contempt powers may not be used to enforce a court order for
   payment of money where execution is available for collection of
   the money (MCLA 600.1701[5]; MSA 27A.1701[5]).

2. CONTEMPT—COURT ORDERS—DELIVERY OF SPECIFIC FUND—CONSTI-
   TUTIONAL LAW—IMPRISONMENT—DEBTOR-CREDITOR RELATION-
   SHIP.
   A defendant may be imprisoned for contempt for failure to
   comply with a court order requiring the defendant to deliver a
   specific fund; however he may not be imprisoned for contempt
   for failure to pay money arising out of a debtor-creditor rela-
   tionship (Const 1963, art 1, § 21).

3. CONTEMPT—CONTRACTS—IMPRISONMENT—DIRECT ORDER OF COURT.
   Contempt power is no way dependent on contract where it is used
   to imprison a defendant who is in violation of a direct order of
   the circuit court.

### DISSENT BY M. J. KELLY, J.

4. CONTEMPT—ENFORCEMENT OF CIVIL REMEDIES—INDEBTEDNESS—EX-
   ECUTION—SPECIAL FUND.
   *Contempt to enforce civil remedies is an extreme resort which
   cannot be justified if there is any other adequate remedy;
   therefore, a defendant's contempt citation, given because the
   defendant failed to comply with a court's order to pay certain
   money to a plaintiff, should be reversed where the relationship
   between the plaintiff and the defendant was a debtor-creditor
   relationship based on an employment contract and execution
   was available to satisfy the debt; a finding that the money in
   the defendant's possession was a special fund is an insufficient*

REFERENCES FOR POINTS IN HEADNOTES
[1, 4] 46 Am Jur 2d, Judgments § 897 *et seq.*
[2, 3] 30 Am Jur 2d, Executions §§ 840, 844.

*reason to use the contempt order rather than execution as a remedy.*

Appeal from St. Joseph, Robert E. A. Boyle, J. Submitted June 9, 1976, at Grand Rapids. (Docket No. 25421.) Decided October 20, 1976.

Petition by the American Oil Company for an order citing John J. Suhonen for contempt for failing to comply with a previous court order that Suhonen turn over to American Oil Company funds under Suhonen's control. Contempt order granted. Suhonen appeals. Affirmed.

*Cholette, Perkins & Buchanan* (by *Sherman H. Cone*), for plaintiff.

*Church, Wyble, Kritselis & Tesseris* (by *Thomas H. Hay*), for defendant.

Before: R. B. BURNS, P. J., and M. J. KELLY and S. S. HUGHES,* JJ.

R. B. BURNS, P. J. Plaintiff petitioned the circuit court for an order citing defendant for contempt for failing to comply with a previous court order. The petition alleged that defendant had failed to comply with the provisions of a judgment entered on June 14, 1973, which required that defendant turn over to plaintiff $3300 which defendant had under his control. Pursuant to this petition a show cause hearing was held on June 2, 1975, and July 15, 1975. The circuit court concluded that defendant had wilfully disobeyed its previous order and ruled that he was in contempt of court. Defendant was ordered to pay the sum of $3300 forthwith or spend 15 days in the county jail. An appeal bond

---

* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

has been filed and defendant is before this Court by right.

The order finding defendant in contempt is the culmination of litigation between the plaintiff corporation and the defendant employee, a salesman. Amongst the claims and counterclaims between the parties at trial was plaintiff's assertion that defendant had collected and was in unauthorized possession of some of plaintiff's accounts receivable. On cross-examination by plaintiff's counsel, defendant discussed that money and the specific amount:

"*By Mr. Buchanan [Counsel for plaintiff]:*

"*Q.* All right, now, did you after you terminated, did you collect any of that money from those customers?

"*A.* Yes.

"*Q.* How much money did you collect on the unauthorized credit account?

"*A.* Around $3,300.

"*Q.* You mean of the balance of about eighteen or $19,000 you only collected $3,300, is that correct?

"*A.* Yes.

"*Q.* Did you try to collect the rest of it?

"*A.* I had nothing to go on, customers ain't going to pay you if you ain't got something to show what they owe you.

"*The Court:* What is your answer? Did you try to collect any of it? I don't want any more of this out of you or I'll do something about it. Is your answer you tried or didn't try?

"*The Witness [Defendant]:* I tried, I guess, yes.

"*Q. (By Mr. Buchanan):* How did you try? What did you do?

"*A.* I just took the people's word for what they owed.

"*Q.* Of the $3,300 that you collected what did you do with that money?

"*A.* It's held to be—It's held in a bank.

"*Q.* Did you turn it over to American Oil Company?

"*A.* Not as of the time being.
"*Q.* You still have it?
"*A.* Yes.
"*Q.* You still have it in your account?
"*A.* Not in my account.
"*Q.* In your possession, under your control?
"*A.* Yes."

The circuit court's January 5, 1973, opinion held as follows:

"Defendant is directed to deliver the $3,700 [later changed to $3,300] he collected on the unauthorized credit accounts to Plaintiff forthwith and he is enjoined from disposing of it or any part of said sum in any other manner. Plaintiff may have execution for the remaining sums herein found due by this Court after Defendant has been duly delivered his stock and credited with commissions owed."

Defendant never complied with the order. Moreover, at the 1975 show cause hearing defendant recanted his trial testimony and stated that he had *not* had the money in his possession at the time of judgment, having spent it already. After taking testimony and reviewing the briefs and transcript of trial, the court concluded that defendant was purposely evading its orders, and issued the contempt order.

Defendant's argument on appeal is bottomed on Const 1963, art 1, § 21, and MCLA 600.1701(5); MSA 27A.1701(5). The constitutional provision states that "[n]o person shall be imprisoned for debt arising out of or founded on contract, express or implied, except in cases of fraud or breach of trust". The relevant portion of the statute provides the penalty as follows:

"Parties to actions, attorneys, counselors, and all

other persons [may be found in contempt] for the non-payment of any sum of money which the court has ordered to be paid, in cases where by law execution cannot be awarded for the collection of the sum, * * * or any other disobedience to any lawful order, decree, or process of the court."

The leading case of *Carnahan v Carnahan,* 143 Mich 390, 396–397; 107 NW 73, 75 (1906), construed the forerunner of the statute as follows:

"It has been the settled rule in this State that, where execution may issue to collect a decree for the payment of money, the proceeding by contempt to enforce a civil remedy cannot be resorted to. * * * (Citations omitted.) We have no doubt that such is now the rule, except as it is modified by 3 Comp. Laws, § 10891, subd. 3, and in construing that section we must harmonize the last provision of subdivision 3—i.e., 'And for any other disobedience to any lawful order, decree or process of such court,' with the earlier provision permitting contempt proceedings on decrees 'for the nonpayment of any sum of money * * * in cases, where by law, execution cannot be awarded'—and if we must say that this is a decree for the payment of money, in the sense of the term there used, this remedy is not appropriate.

"As already indicated, this decree should be interpreted as deciding that upon a settlement of the question of alimony the court has determined how the property of the husband or that in which he has an interest with his wife shall be divided between them. It has been found, and adjudicated, that of this property she has in her control, beyond the jurisdiction of the court, on deposit, the amount, a sum which equitably belongs to him, and that she turn over and pay *this sum.* (Emphasis in original.) This is not a decree for the payment of money in the ordinary sense. It is not subject to the exemption law. *The decree requires delivery of the specific thing—i.e., the fund—in contradistinction to the payment of a debt, and a writ of execution is not appropriate in such a case."* (Emphasis added.)

The Court has repeatedly reaffirmed the "specific" or "special fund" exception to the execution requirement in the statute, applying an implicit trustee-beneficiary analysis. *Smith v Lapeer Circuit Judge,* 251 Mich 126; 230 NW 905 (1930), *In re Ridgley,* 261 Mich 42; 245 NW 803 (1932). By contrast, in clear debtor-creditor situations the traditional remedy of execution has been required. *Brownwell Corp v Ginsky,* 247 Mich 201; 225 NW 531 (1929), *Rosenthal v American Construction & Realty Co,* 262 Mich 91; 247 NW 117 (1933).

Defendant's own testimony at trial indelibly established that a specific fund existed in this case, and we cannot allow him to evade the circuit court's orders by repudiation of his testimony. We agree with the Federal judge who presided over defendant's subsequent bankruptcy application: "The State Judge found that the bankrupt then had on hand $3,300 and the bankrupt certainly so testified. At that time, the bankrupt became trustee as to this amount." This amount simply cannot be characterized as a "debt" so as to activate the constitutional provision.

We further observe that the circuit court emphasized that the contempt action was not undertaken over the money involved, but rather "for the flagrant and blatant violation of the order of the court issued to defendant Suhonen". The last clause of paragraph (5) of MCLA 600.1701; MSA 27A.1701 is expressed in the alternative mode: *"or* any other disobedience to any lawful order, decree, or process of the court". (Emphasis added.) This language combines with the language of MCLA 600.1711; MSA 27A.1711 to support the settled principle that courts of record have inherent power to punish contumacious conduct—"contemptuous disobedience to the court". See *People v*

*Matish,* 384 Mich 568, 571–572; 184 NW2d 915, 916 (1971). And where a defendant is in violation of a direct order of the circuit court, contempt power is "in no way dependent on contract". *Maljak v Murphy,* 385 Mich 210, 218; 188 NW2d 539, 543 (1971). The record supports the circuit court's determination that defendant was hostile, evasive, and without intention to comply with its orders; in a word, contemptuous. The judgment is affirmed. Costs to plaintiff.

S. S. HUGHES, J., concurred.

M. J. KELLY, J. *(dissenting).* The present action arose out of litigation concerning an employment contract entered into between the parties. On February 2, 1971, the plaintiff filed suit alleging that the defendant had breached the employment contract, claiming damages in the amount of $25,-456.42. Defendant counterclaimed for the sum of $50,984. The circuit court's January 5, 1973, opinion[1] concluded that neither party should entirely prevail. It found that the defendant owed the plaintiff $10,999.68, but was entitled to a set-off totaling $2,343.97. Regarding the unauthorized credit accounts, the circuit court found that the defendant owed the plaintiff $9,600, of which $3,-700 (later reduced to $3,300) had been collected by the defendant.

The majority, in affirming the trial court concludes that the $3,300, being unauthorized accounts receivable which defendant had collected, was a specific fund, that execution was unavailable and thus the contempt action was appropriate.

---

[1] The case was originally tried as a nonjury trial in December, 1972. The court's opinion was rendered in January, 1973, and inexplicibly the contempt proceeding was initiated by order to show cause after the expiration of 2-1/2 years. The show cause hearing was conducted in the trial court on June 2nd and July 15th, 1975.

However, the relationship between the parties was not a trustee-beneficiary relationship, either explicit or implicit. The relationship between the plaintiff and the defendant was a debtor-creditor relationship, based upon an employment contract.

In *Rosenthal v American Construction & Realty Co,* 262 Mich 97; 247 NW 119 (1933), the garnishee-defendant bank refused to release $4,035.80 that it held in its account for the principal defendant after the circuit court had ordered the funds released. The circuit court found the bank in contempt for failure to pay the money and fined the bank $100. The Michigan Supreme Court reversed and held that the relation of the two parties was simply one of debtor and creditor and as execution was available, no contempt could lie. The court stated:

> " 'We have no difficulty in holding that the process of contempt to enforce civil remedies is one of those extreme resorts which cannot be justified if there is any other adequate remedy.' " 262 Mich 97, 99. (Citation omitted.)

Clearly in *Rosenthal,* the bank held the defendant's money in a "special fund" and yet this was not enough since execution was available to satisfy the debt. In the present case there was no showing that the plaintiff could not have availed itself of the remedy of execution.

The court in *Rosenthal, supra,* at 100, further declared:

> " 'Where collection of money due on contract between private parties can be enforced in simple action at law by execution, party may not be imprisoned for contempt for failure to pay it to clerk upon order of court (3 Comp. Laws 1959, § 12268, subd. 5 [3 Comp. Laws 1929,

§ 13910, subd. 5]).' *Brownwell Corp v Ginsky* (syllabus), 247 Mich 201 [225 NW 531 (1929)], citing several other decisions of this court."

Therefore, I would reverse the circuit court's finding of contempt.