******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

ROBERT PEASE *v.* THE CHARLOTTE HUNGERFORD
HOSPITAL ET AL.
(SC 19761)

Rogers, C. J., and Palmer, Eveleigh, McDonald, Espinosa, Robinson and
Vertefeuille, Js.*

*Argued December 8, 2016—officially released May 2, 2017*

*Michael G. Rigg*, for the appellant (named defendant).

*Michael C. Conroy*, for the appellee (plaintiff).

*Opinion*

VERTEFEUILLE, J. The dispositive question presented by this appeal is whether a prevailing party in a civil action can enforce an unpaid award of costs through a motion for civil contempt rather than by pursuing the various postjudgment remedies authorized by chapter 906 of the General Statutes. We conclude that, under ordinary circumstances, such as those in this case, the court's inherent contempt power is not an appropriate means of enforcing an award of costs or other monetary judgment. We therefore affirm the judgment of the trial court denying the motion of the named defendant, The Charlotte Hungerford Hospital, to hold the plaintiff, Robert Pease, in contempt of court.

The following procedural history is relevant to our disposition of this appeal. The plaintiff brought an action against the defendants, the hospital and one of its employees, Kateri D. Veillette, a registered nurse, for personal injuries allegedly sustained as a result of medical malpractice.[1] The case was tried to a jury, which returned a verdict in favor of the hospital, and the trial court, *Pickard, J.*, rendered judgment in accordance with the verdict. The hospital then filed a bill of costs and, following the court clerk's approval of the bill, the plaintiff sought review by the trial court. See Practice Book § 18-5 (b). The trial court ultimately awarded the hospital $5965 in expert fees and other costs.

Approximately five months later, the hospital filed a motion to hold the plaintiff in contempt of court. Claiming that the award of costs was a court order, and thus amenable to contempt, the hospital alleged that the plaintiff had not paid any of the awarded costs and speculated that the plaintiff had the ability to comply with the order,[2] but simply refused to do so. By way of initial remedy, the hospital requested that the court issue a written order that the plaintiff must pay $5965 in accordance with the court's taxation of costs by some date certain. The hospital did not and does not contend that, prior to moving for contempt, it pursued any of the postjudgment remedies that our legislature has authorized under chapter 906 of the General Statutes, including executing the award of costs; see General Statutes §§ 52-356a and 52-361a; placing a judgment lien on the plaintiff's real or personal property; see General Statutes §§ 52-355a and 52-380a; and examining the plaintiff as a judgment debtor or engaging in other forms of postjudgment discovery. See General Statutes §§ 52-351b and 5-397.

Following a hearing, the court denied the hospital's motion for contempt. In its order, the court "agree[d] with the plaintiff that an award of costs to the prevailing party following a jury trial is not an order that should be enforced with the contempt power" and "suggest[ed]

that the [hospital] consult the normal methods of enforcing a judgment in General Statutes chapter 906 or the possibility of a suit on the debt . . . .'' The court also declined to issue an order requiring that the plaintiff pay the costs by a definite date.

The hospital appealed to the Appellate Court, contending that the trial court improperly concluded, as a matter of law, that it lacked the inherent authority to coerce compliance with an award of costs. We transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1. Prior to oral argument, this court, sua sponte, asked the parties to address the jurisdictional question of whether the denial of the motion for contempt was an appealable final judgment. Additional facts will be set forth as necessary.

I

At the outset, we must determine whether the trial court's denial of a postjudgment motion for contempt is an appealable final judgment. See *State* v. *Johnson*, 301 Conn. 630, 640, 26 A.3d 59 (2011). The hospital contends that it is. The plaintiff disagrees, arguing that the present appeal should be governed by the jurisdictional test that we apply to interlocutory orders under *State* v. *Curcio*, 191 Conn. 27, 463 A.2d 566 (1983), and that the denial of a motion for contempt does not satisfy either prong of the *Curcio* test—it neither terminates a separate and distinct proceeding nor so concludes the rights of the parties that further proceedings cannot affect them. We agree with the hospital that the denial of a postjudgment motion for civil contempt constitutes an appealable final judgment.[3]

Although neither party cites to it, our decision most directly on point is *Potter* v. *Board of Selectmen*, 174 Conn. 195, 384 A.2d 369 (1978). In *Potter*, this court had held in a prior proceeding that the plaintiff was improperly denied a permit to operate a mobile home park. See id., 196. Subsequently, the defendant town denied the plaintiff the necessary building and health permits relating to the project and he sought a contempt order. Id. On appeal, we reviewed the trial court's denial of a finding of contempt on the merits, noting that such determinations are final adjudications that are within our power to review. See id., 196–97. We did so despite the fact that the plaintiff had not exhausted his available remedies and could have pursued independent administrative appeals from the denial of his requests for the permits in question. See id., 199 n.2. Although *Potter* came to us in a unique procedural posture, we have since cited the case for the general proposition that denial of a postjudgment motion for contempt is a final judgment subject to appellate review. See *Pritchard* v. *Pritchard*, 281 Conn. 262, 272–73, 914 A.2d 1025 (2007). The Appellate Court also has read *Potter* broadly for the conclusion that "the denial of a motion for contempt

is a final judgment for purposes of appeal . . . ."[4] *Willocks* v. *Klein*, 38 Conn. App. 317, 320, 660 A.2d 869 (1995); see *Johnson* v. *Clark*, 113 Conn. App. 611, 617, 967 A.2d 1222 (2009) (same).

Moreover, to the extent that the *Curcio* test, which governs interlocutory appeals, applies to the present case, we disagree with the plaintiff's contention that the first prong of that test is not satisfied. Our *Curcio* jurisprudence is animated by the principle that parties should not repeatedly interrupt ongoing litigation to conduct piecemeal appeals, especially when they will have the opportunity to challenge all pertinent rulings after the litigation culminates in a final judgment. See *Melia* v. *Hartford Fire Ins. Co.*, 202 Conn. 252, 257–58, 520 A.2d 605 (1987); *State* v. *Curcio*, supra, 191 Conn. 30–31. Here, however, both the underlying litigation and the ancillary contempt proceedings have terminated. There is no ongoing proceeding or litigation the completion of which the parties must await, and we do not see any different termination point at which an appeal will be more appropriate. Accordingly, aside from certain exceptions not relevant to the present appeal, a completed contempt hearing generally has been treated as a separate and distinct proceeding for *Curcio* purposes. Compare *Beveridge* v. *Beveridge*, 7 Conn. App. 11, 14–15, 507 A.2d 502 (1986) (motion for contempt deemed appealable under first prong of *Curcio* because it can proceed independently), with *N.D.R. Liuzzi, Inc.* v. *Lighthouse Litho, LLC*, 144 Conn. App. 613, 621–22, 75 A.3d 694 (2013) (contempt finding did not terminate separate and distinct proceeding because further hearing on contempt motion was required to address outstanding issues), and *Zirinsky* v. *Zirinsky*, 87 Conn. App. 257, 274–75, 865 A.2d 488 (2005) (striking two counts from contempt motion was not appealable final judgment because those claims were not sufficiently severable from overall contempt motion), cert. denied, 273 Conn. 916, 871 A.2d 372 (2005). For these reasons, we conclude that the trial court's denial of the hospital's motion for contempt constituted an appealable final judgment.

## II

Having established jurisdiction, we turn next to the merits of the hospital's claim that the trial court improperly denied the motion for contempt without first determining whether the plaintiff's failure to pay was wilful. The hospital's argument proceeds in three steps. First, the hospital posits that the court decided, as a matter of law, that it lacked the inherent authority to coerce the plaintiff to comply with the award of costs and, therefore, declined to conduct a factual determination as to whether the plaintiff was in contempt. Second, the hospital contends that a trial court does in fact possess the inherent authority to use its contempt power to compel compliance with an order taxing costs.

Third, the hospital argues that a judgment creditor may seek to enforce a monetary judgment or taxation of costs through a motion for contempt without first pursuing the various postjudgment remedies afforded by chapter 906, and that it is not an abuse of the court's discretion to enforce such a judgment or award via contempt even if the statutory remedies have not been exhausted. The plaintiff, by contrast, contends that the trial court properly recognized that contempt is a "drastic" remedy; *Woodbury Knoll, LLC* v. *Shipman & Goodwin, LLP*, 305 Conn. 750, 766 n.12, 48 A.3d 16 (2012); that, under normal circumstances, should not be used to enforce a routine monetary judgment or award of costs in lieu of the statutory collection procedures.[5] We agree with the plaintiff.

The standard by which we review a trial court's denial of a motion for civil contempt hinges on the rationale for the court's ruling. To the extent that the trial court concluded as a matter of law that it lacked the authority to find the plaintiff in contempt, our review is plenary.[6] See *AvalonBay Communities, Inc.* v. *Plan & Zoning Commission*, 260 Conn. 232, 239–40, 796 A.2d 1164 (2002).

Whether and under what circumstances a prevailing party may enforce an award of costs by a motion for contempt are questions of first impression for this court. Although we did not squarely confront the issue, our decisions in *Fox* v. *First Bank*, 198 Conn. 34, 501 A.2d 747 (1985), and *In re Dean*, 246 Conn. 183, 717 A.2d 176 (1998), are instructive.

In *Fox* v. *First Bank*, supra, 198 Conn. 39–40, this court affirmed the dismissal of the plaintiff's action as a sanction for contempt, after the plaintiff thrice failed to make installment payments ordered by the trial court. Applying a highly deferential standard of review, the majority concluded that the facts of the case "demonstrate[d] sufficient disregard for the court's order and deliberate disregard of the authority of the court to warrant the trial court's imposition of a sanction for noncompliance." Id., 40. Writing in dissent, however, Justice Shea argued that this court should not have reached the question of whether dismissal was an appropriate sanction because, from the outset, the trial court lacked jurisdiction to find the plaintiff in contempt for failure to make payments on a debt arising from a court order. Id., 41–42. Justice Shea explained that "[t]he practice of imprisonment for ordinary debts was abandoned long ago and it defies credulity to assume that the court . . . in entering the order that is the basis for the finding of contempt intended that the plaintiff's noncompliance might result in her incarceration or other punishment for contempt. It would be most unusual for a court to make its contempt power available to a creditor in the collection of an ordinary debt. . . . The plaintiff's default on the debt she owed the

defendant did not . . . subject her to punishment for contempt."[7] (Citation omitted.) Id., 43 (*Shea, J.*, dissenting). In *Fox*, however, the plaintiff, having conceded that her failure to obey the court's order was punishable by contempt, opted not to challenge either the court's authority or the contempt finding itself. Id., 37, 39. Accordingly, the majority declined to consider the issue raised by the dissenting justice and instead simply presumed that the trial court had both the authority and a sufficient basis for the imposition of contempt sanctions. Id., 39; see also id., 40–41 n.3 (declining to consider propriety of "imprisonment for ordinary debts" and indicating that "our decision might well be advised by different considerations" if issue raised by dissent were properly before court [internal quotation marks omitted]).

Subsequently, in *In re Dean*, supra, 246 Conn. 184, we considered whether a judge of the Superior Court had properly been censured for his failure to comply with a court order requiring him to make weekly installment payments. In tracing the history of General Statutes § 52-356d (d), which governs the enforcement of installment payment orders, we noted that in 1939 the legislature had removed contempt as a sanction for failure to comply with an order of payments. Id., 195. We speculated that this decision "may have reflected [in part] the modern abolition of the notion of imprisonment for failure to pay civil, nonfamily judgments, or 'debtor's prison.' " Id., 195 n.16. As in *Fox*, however, there was no need for us to conclusively determine in *In re Dean* whether a trial court's common-law contempt power is ever an appropriate means of enforcing a routine monetary judgment or award of costs.

In the absence of any controlling authority from this court or clear guidance from the legislature,[8] the hospital directs our attention to three decisions of the Appellate Court to support its theory that finding the plaintiff in contempt under the circumstances of this case would have been an appropriate exercise of the trial court's inherent authority: *Rozbicki* v. *Gisselbrecht*, 152 Conn. App. 840, 100 A.3d 909 (2014), cert. denied, 315 Conn. 922, 108 A.3d 1123 (2015), *Montagnese* v. *Spicer*, 130 Conn. App. 301, 22 A.3d 702 (2011), and *Clement* v. *Clement*, 34 Conn. App. 641, 643 A.2d 874 (1994). In each of those decisions, the hospital posits, the Appellate Court affirmed a finding of contempt on the basis of a party's failure to comply with a court's financial order. None of those decisions is binding on this court, however, and we do not find any to be persuasive authority for the hospital's position.

In *Spicer*, the parties entered into an agreement to resolve a summary process action, whereby the plaintiff property owner agreed to pay the defendant, who lived with the plaintiff, $75,000 in exchange for her agreement to vacate the property. *Montagnese* v. *Spicer*, supra,

130 Conn. App. 303. After the defendant vacated the premises, the plaintiff failed to pay the full sum due under the stipulated judgment and the defendant filed several motions for contempt. Id. When the plaintiff then failed to make monthly installment payments as subsequently ordered by the court, the court held the plaintiff in contempt and, after finding that he had the financial ability to comply with the court's orders and was in wilful contempt of them, ordered the plaintiff incarcerated. Id., 303–306. On appeal, the Appellate Court, affirming the judgment per curiam, noted that the plaintiff, who was self-represented, had failed to adequately brief many of his claims of error or to perfect the record for appellate review. See id., 304 n.2 and 305 n.3. Accordingly, the Appellate Court considered only the plaintiff's factual claim that his financial circumstances rendered compliance with the court's order impossible. Id., 304 n.2. Notably, the Appellate Court declined to address the plaintiff's legal claims that the trial court (1) overstepped its authority in holding him in contempt for failure to make an installment payment, and (2) improperly relied on decisions addressing marital dissolution disputes. See *Montagnese* v. *Spicer*, Conn. Appellate Court Records & Briefs, April Term, 2011, Plaintiff's Brief pp. ii–iii.[9]

Similarly, in *Gisselbrecht*, the Appellate Court was asked to rule not on the propriety of the trial court's contempt finding but, rather, on the distinct question whether that court had jurisdiction to act on the motion for contempt. See *Rozbicki* v. *Gisselbrecht*, supra, 152 Conn. App. 845. That case also is readily distinguishable, insofar as the contempt issued against an attorney who was assessed—and refused to pay—the costs of videotaping a deposition after the court determined that he had been using the discovery process in an abusive and unprofessional manner, potentially in violation of the Rules of Professional Conduct.[10] See id., 842–45; *Rozbicki* v. *Gisselbrecht*, Superior Court, judicial district of Litchfield, Docket No. CV-10-6001830-S (May 30, 2013).

The hospital's reliance on *Clement* is also misplaced. That was a dissolution of marriage case and thus, like *Gisselbrecht*, is readily distinguishable. See footnote 4 of this opinion. Moreover, the question of whether the plaintiff in *Clement* had properly been found to be in contempt of the court's dissolution decree was deemed to be moot because the contempt finding was vacated during the pendency of the appeal. See *Clement* v. *Clement*, supra, 34 Conn. App. 651. In none of the cases cited by the hospital, then, did the Appellate Court affirmatively conclude that a trial court may use its inherent contempt powers to enforce an ordinary monetary judgment or award of costs.

In the absence of controlling or persuasive Connecticut authority, we look to the law of other jurisdictions. See *Luurtsema* v. *Commissioner of Correction*, 299

Conn. 740, 754, 12 A.3d 817 (2011). Under ordinary circumstances, neither the federal courts nor the majority of our sister states permit a litigant to be held in civil contempt merely for failure to pay an award of costs or satisfy a routine monetary judgment. See L. Shepard, "Creditors' Contempt," 2011 BYU L. Rev. 1509, 1543–44 (2011). In the federal courts, "[p]ursuant to [rule 69 (a) (1) of the] Federal Rule[s] of Civil Procedure . . . money judgments are enforced by entry of judgment and writ of execution, not by a contempt order, absent exceptional circumstances." (Internal quotation marks omitted.) *Frazier* v. *APM Financial Solutions, LLC*, Docket No. 3:11CV1762, 2015 WL 8483237, *3 (D. Conn. December 9, 2015). Many state courts follow a similar approach, permitting the use of the common-law contempt power to enforce orders of costs or monetary judgments only in the family law context or under extraordinary circumstances.[11] See, e.g., *In re Estate of Bonham*, 817 A.2d 192, 195 (D.C. 2003); *American Oil Co.* v. *Suhonen*, 71 Mich. App. 736, 741–42, 248 N.W.2d 702 (1976); *Cantalupo Construction Corp.* v. *2319 Richmond Terrace Corp.*, 141 App. Div. 3d 626, 628, 34 N.Y.S.3d 616 (2016); *Boudwin* v. *Boudwin*, 162 Wn. 142, 144, 298 P. 337 (1931); see also *Fox* v. *Fox*, 56 Ill. App. 3d 446, 448, 371 N.E.2d 1254 (1978) (majority rule is that contempt is not proper means of enforcing payment of support arrearages once children have reached majority); 17 Am. Jur. 2d 568, Contempt § 128 (2017) ("Contempt does not generally support the enforcement of debts reduced to judgments, or monetary judgments, when the effect of the order would be jail for nonpayment of a debt. Contempt cannot be used as a mere debt-collecting device." [Footnotes omitted.]). In other jurisdictions, this use of the contempt power is prohibited by state constitution; see, e.g., *Schwarz* v. *Waddell*, 422 So. 2d 61, 63 (Fla. App. 1982); *State ex rel. Shaunki* v. *Endsley*, 266 Ind. 267, 268, 362 N.E.2d 153 (1977); *Wright* v. *Wright*, 189 La. 539, 543, 179 So. 866 (1938); *Ex parte Thomas*, 610 S.W.2d 213, 214 (Tex. Civ. App. 1980); or by statute. See, e.g., *In re Adam*, 105 Haw. 507, 518, 100 P.3d 77 (App. 2004); *In re Marriage of Rathe*, 521 N.W.2d 748, 750 (Iowa 1994); *In re Estate of Downs*, 300 S.W.3d 242, 246 (Mo. App. 2009). To a large extent, these rules arose out of and reflect the early nineteenth century movement to abolish imprisonment for commercial debt. See note, "State Bans on Debtors' Prisons and Criminal Justice Debt," 129 Harv. L. Rev. 1024, 1026–27, 1034 (2016).

Connecticut is one of a handful of states that have not adopted a constitutional amendment prohibiting debtors' prisons. Id., 1035. Nevertheless, as Justice Shea persuasively argued in his dissenting opinion in *Fox* v. *First Bank*, supra, 198 Conn. 42–43, the history and public policy rationales that have led our sister courts to bar the use of the contempt power to enforce ordinary monetary judgments counsel the same result here. Con-

necticut abolished imprisonment for contractual debt by statute as early as 1838; see *Armstrong* v. *Ayres*, 19 Conn. 540 (1849); and, as noted, the legislature has continued to restrict the types of debt for which contempt is a permissible sanction. See *In re Dean*, supra, 246 Conn. 195. As have our sister states, Connecticut has rejected the practice of imprisonment for debt as inhumane, unjust, and generally ineffective. See T. Myers, "Prison or Payment? Benthamism, the Modern Debtors' Prison, and Its Historical Roots," 8 Wash. U. Jurisprudence Rev. 263, 268 (2016). In the words of Charles Dickens, whose writings contributed in no small part to its demise, the debtor's prison "is gone now, and the world is none the worse without it."[12] C. Dickens, Little Dorrit (1857) bk. 1, c. 6.

Moreover, we see no reason why scarce judicial resources—both trial and appellate—should be consumed and the "legal thumbscrew"[13] of contempt brought to bear in a case such as this, particularly when the legislature has provided prevailing parties with a full complement of statutory collection remedies. As we explained in *Woodbury Knoll, LLC* v. *Shipman & Goodwin, LLP*, supra, 305 Conn. 765 n.12, "contempt . . . should be considered an important and drastic power of the court . . . ." Relying on contempt for the collection of routine debts "runs the risk of trivializing this power." Id., 766 n.12.

In most instances, the statutory postjudgment remedies authorized by chapter 906 of the General Statutes will be fully adequate to meet the needs of the judgment creditor in normal collection situations. See T. Myers, supra, 8 Wash. U. Jurisprudence Rev. 272. The hospital has failed to articulate any reason why those remedies are inadequate to address its claim for payment.[14] Accordingly, we see no reason why Connecticut should diverge from the majority rule that, outside of the marital dissolution and child support context, ordinary monetary judgments and taxations of costs are not subject to enforcement by civil contempt absent extraordinary circumstances. Insofar as the hospital failed to allege any extraordinary circumstances that might justify a departure from the general rule,[15] we conclude, as a matter of law, that the trial court properly denied the motion for contempt without first determining whether the plaintiff's failure to pay was wilful.

The judgment is affirmed.

In this opinion the other justices concurred.

* This case originally was scheduled to be argued before a panel of this court consisting of Chief Justice Rogers and Justices Palmer, Eveleigh, McDonald, Espinosa, Robinson and Vertefeuille. Although Justice Palmer was not present when the case was argued before the court, he has read the briefs and appendices, and listened to a recording of the oral argument prior to participating in this decision.

[1] The plaintiff later withdrew his claim against Veillette, leaving the hospital as the sole remaining defendant.

[2] The parties disagree as to whether the award of costs constituted an order of the court. Our resolution of the appeal renders it unnecessary for

us to address that question. There is no dispute, however, that the award of costs established an obligation by the plaintiff to pay the amount awarded.

[3] We note that General Statutes § 52-400d (a) provides that "[a]ny court decision on a determination of interest in property under section 52-356c, or on an exemption claim, *or on a contempt proceeding,* or on any stay ordered pursuant to an installment payment order, shall be a final decision for the purpose of appeal." (Emphasis added.) We assume without deciding that: (1) the contempt proceedings encompassed by § 52-400d are limited to those expressly authorized in chapter 906; see, e.g., General Statutes §§ 52-399 and 52-400b; (2) a finding of contempt, pursuant to the court's common-law authority as recognized in Practice Book § 1-21A, for failure to pay costs would not constitute a "compliance order" for purposes of chapter 906; see General Statutes § 52-350a (15) (defining "[p]ostjudgment procedure[s]"); and, therefore, (3) § 52-400d does not confer appellate jurisdiction under the present circumstances. See *N.D.R. Liuzzi, Inc.* v. *Lighthouse Litho, LLC*, 144 Conn. App. 613, 620, 75 A.3d 694 (2013).

[4] The hospital relies instead on *Ahneman* v. *Ahneman*, 243 Conn. 471, 478–80, 706 A.2d 960 (1998), and its progeny, for the proposition that the denial of a postjudgment motion for contempt is immediately appealable. *Ahneman*, however, stands only for the limited proposition that "a trial court ruling on a motion for contempt *in a marital dissolution action* is a final judgment for purposes of appeal." (Emphasis added.) Id., 479. As we recognized in that decision, unique considerations govern the adjudication of "marital dissolution cases because of the likelihood of continuing changes in the parties' circumstances requiring continuing dispute resolution by the court." Id., 484.

[5] At oral argument before this court, the parties appeared to agree that the various postjudgment remedies authorized by chapter 906 of the General Statutes may be used to enforce an award of costs as well as a monetary judgment. We have no reason to conclude otherwise, although we note that the postjudgment procedures chapter contemplates that costs have been assessed to a party who also has obtained a money judgment. See General Statutes § 52-350f (1) (providing that judgment may be enforced "to the amount of the money judgment with . . . all statutory costs and fees"); General Statutes § 52-351 (unsatisfied costs of execution may be included in judgment for collection purposes).

[6] Because we conclude, as a matter of law, that the trial court properly denied the motion for contempt, we need not consider the plaintiff's claim that the court declined to find him in contempt as an exercise of its discretion and, therefore, that we should review the ruling only for abuse of discretion. See *AvalonBay Communities, Inc.* v. *Plan & Zoning Commission*, 260 Conn. 232, 239–40, 796 A.2d 1164 (2002).

[7] Contempt of court may be punished by fine or imprisonment. See, e.g., General Statutes §§ 51-33 through 51-35 and 52-400b.

[8] Nothing in the text or legislative history of chapter 906 of the General Statutes indicates that the various postjudgment remedies authorized by that chapter represent the exclusive means of enforcing a monetary judgment or award of costs. In fact, this court has recognized that at least one common-law equitable remedy not referenced in chapter 906 remains available to judgment creditors. See *Burchett* v. *Roncari*, 181 Conn. 125, 127–29, 434 A.2d 941 (1980) (creditor's bill in equity available to judgment creditor who has no adequate remedy at law); see also J. Kaye & W. Effron, 3A Connecticut Practice Series: Civil Procedure Forms (4th Ed. 2004) Form S-169, authors' comment, p. 569 (opining that creditor's bill remains available remedy notwithstanding comprehensive treatment of rights and obligations of debtors and creditors in chapter 906 of General Statutes).

[9] The Appellate Court also was not asked to and did not consider whether the contempt order was in violation of General Statutes § 52-356d (d), which provides in relevant part that "[a]n installment payment order shall not be enforced by contempt proceedings . . . ."

[10] In observing that *Gisselbrecht* is distinguishable, we express no opinion as to whether a finding of contempt was warranted under what the Appellate Court identified as the "unusual circumstances" of that case. *Rozbicki* v. *Gisselbrecht*, supra, 152 Conn. App. 849.

[11] Exception is frequently made for cases of fraud or for refusal by a party to turn over specific assets. See note, "State Bans on Debtors' Prisons and Criminal Justice Debt," 129 Harv. L. Rev. 1024, 1036 (2016). Some jurisdictions permit the use of contempt to enforce a monetary judgment or award of costs only when all legal means of enforcement have been exhausted. See id., 1038 and n.120.

[12] We are not reassured by the hospital's argument that the injustices associated with debtor's prison are not at issue here because judgment creditors such as the plaintiff can be imprisoned for contempt only if they are able to pay but wilfully refuse to do so. See T. Myers, supra, 8 Wash. U. Jurisprudence Rev. 273–74 (arguing that ability to pay determinations often are arbitrary and subjective); S. Ware, "A 20th Century Debate about Imprisonment for Debt," 54 Am. J. Legal Hist. 351, 369–70 and n.106 (2014) (discussing historical evidence that debtors without financial means often have been wrongly imprisoned).

[13] *Dollard* v. *Koronsky*, 67 Misc. 90, 94, 121 N.Y.S. 987 (App. Term), aff'd, 138 App. Div. 213, 123 N.Y.S. 11, aff'd, 199 N.Y. 558, 93 N.E. 1119 (1910).

[14] The hospital argues at length as to why a court *can* use its contempt power to enforce an award of costs but never explains why the court *should* do so here. The hospital's reliance on *AvalonBay Communities, Inc.* v. *Plan & Zoning Commission*, supra, 260 Conn. 232, in this respect is misplaced, as that decision did not address the question of whether contempt is an appropriate means of enforcing a *monetary* judgment.

[15] Because none were alleged, we need not decide what types of exceptional circumstances—if any—might justify holding a party in contempt for failure to pay a civil award of costs, nor whether the standards governing awards of costs differ from those governing monetary judgments. See *DRHI, Inc.* v. *Hanback*, 288 Va. 249, 255 n.2, 765 S.E.2d 9 (2014) (leaving open question whether civil contempt proceedings can ever be appropriate process for enforcing monetary judgments outside of domestic relations cases).

———————————————————