******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

## DONNA KRAUSMAN *v.* LIBERTY MUTUAL INSURANCE COMPANY
### (AC 42240)

Keller, Prescott and Bishop, Js.

*Syllabus*

The plaintiff, who had been operating her motor vehicle when it collided with a vehicle operated by a third party, sought to recover underinsured motorist benefits allegedly due under a policy of automobile insurance issued to the plaintiff by the defendant insurance company. The trial court granted the defendant's motion to bifurcate the plaintiff's underinsured motorist claim from her two other claims, alleging violations of the Connecticut Unfair Insurance Practices Act and the Connecticut Unfair Trade Practices Act, and subsequently referred the underinsured motorist claim to an arbitrator. The arbitrator issued a decision for the plaintiff, awarding her $19,500, which became a judgment on the underinsured motorist claim after the defendant did not move for a trial de novo. The plaintiff, pursuant to statute (§ 52-351b), thereafter served the defendant with interrogatories, seeking discovery as to the defendant's assets. After the defendant failed to respond to the interrogatories in a timely manner, the plaintiff filed a motion for an order of compliance, asking the court to compel the defendant to respond, which the court denied. On appeal, the plaintiff claimed that the court improperly denied her motion for an order of compliance with her postjudgment interrogatories. *Held* that the appeal was premature and jurisdictionally defective; the trial court's denial of the plaintiff's motion to compel was an interlocutory order in an ongoing civil action that was not immediately appealable because it neither terminated a separate and distinct proceeding nor deprived the plaintiff of a presently held statutory or constitutional right that would be irretrievably lost in the absence of immediate appellate review, the judgment on the underinsured motorist claim did not dispose of all the causes of action in the plaintiff's complaint brought against a particular party; moreover, the plaintiff was not deprived of her right to enforce at some later time the monetary judgment, which she retains, but merely her right to compel the defendant's present response to her interrogatories, a right she does not presently hold and one that is subject to the discretion of the court, and the discovery dispute remained enmeshed and intertwined with the adjudication of the issues remaining in the action.

Argued November 19, 2019—officially released February 11, 2020

*Procedural History*

Action to recover underinsured motorist benefits allegedly due pursuant to an automobile insurance policy issued by the defendant, and for other relief, brought to the Superior Court in the judicial district of Stamford, where the court, *Jacobs, J.*, granted the defendant's motion to bifurcate; thereafter, the underinsured motorist claim was referred to an arbitrator, who issued a decision for the plaintiff; subsequently, the court granted the plaintiff's motion for judgment in accordance with the arbitrator's award; thereafter, the court, *Hernandez, J.*, denied the plaintiff's motion for an order of compliance, and the plaintiff filed an appeal to this court. *Appeal dismissed.*

*Alan Scott Pickel*, with whom, on the brief, was *Steven A. Landis*, for the appellant (plaintiff).

*Patrick T. Uiterwyk*, with whom, on the brief, was

*Kevin P. Polansky*, for the appellee (defendant).

*Opinion*

PRESCOTT, J. The plaintiff, Donna Krausman, filed this interlocutory appeal from the trial court's denial of her motion for an order compelling the defendant, Liberty Mutual Insurance Company, to respond to interrogatories that she served pursuant to General Statutes § 52-351b.[1] The plaintiff claims on appeal that the defendant was required by statute to answer the interrogatories and that the court improperly failed, as a matter of law, to grant her motion to compel. The defendant, in addition to disputing the merits of the plaintiff's claim, argues that the appeal should be dismissed for lack of a final judgment.[2] We agree with the defendant that the court's ruling was an interlocutory discovery order in an ongoing civil action that is not immediately appealable because it neither terminated a separate and distinct proceeding nor deprived the plaintiff of a presently held statutory or constitutional right that would be irretrievably lost in the absence of immediate appellate review. See *State* v. *Curcio*, 191 Conn. 27, 31, 463 A.2d 566 (1983); see also *Hartford Accident & Indemnity Co.* v. *Ace American Reinsurance Co.*, 279 Conn. 220, 226–27, 901 A.2d 1164 (2006). Accordingly, we dismiss the appeal for lack of subject matter jurisdiction.

The record reveals the following facts and procedural history. In April, 2015, the plaintiff was involved in a motor vehicle accident in which her vehicle collided with a vehicle operated by a third party, Anne Neilson. After exhausting the limits of Neilson's automobile liability policy, the plaintiff, on January 12, 2017, commenced the underlying action to recover, among other things, underinsured motorist benefits from the defendant, her own automobile liability insurer. The operative amended complaint contained three counts. Count one alleged that the parties were "unable to agree as to the amount of damages to which the plaintiff is entitled" under the underinsured motorist provisions of her automobile liability policy issued by the defendant. Count two alleged that the defendant had engaged in unfair and deceptive insurance practices, including misrepresenting the benefits payable to the plaintiff, in violation of the Connecticut Unfair Insurance Practices Act (CUIPA), General Statutes § 38a-815 et seq. Count three alleged that the same conduct violated the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq.

On April 17, 2017, the defendant filed a motion, pursuant to General Statutes § 52-205, seeking to bifurcate the plaintiff's underinsured motorist claim from her CUIPA and CUTPA claims, and to adjudicate the underinsured motorist claim prior to hearing the CUIPA and CUTPA claims. On June 24, 2017, the court, *Jacobs, J.*, granted the motion to bifurcate. The court subsequently referred count one of the complaint, the underinsured motorist claim, to an arbitrator pursuant to General

Statutes § 52-549u.[3]

On January 17, 2018, the arbitrator, Attorney John R. Downey, issued a decision finding for the plaintiff on her underinsured motorist claim and awarding her $19,500 in damages. On February 23, 2018, the plaintiff filed a motion asking the court to render judgment with respect to count one of the complaint in accordance with the arbitrator's decision. In the motion, the plaintiff asserted that the defendant had failed to demand a trial de novo pursuant to General Statutes § 52-549z (a).[4] On March 12, 2018, the court granted the plaintiff's motion for judgment.[5]

Thereafter, pursuant to § 52-351b, the plaintiff served the defendant with interrogatories dated June 7, 2018, seeking discovery as to the defendant's assets. After the defendant failed to respond to the interrogatories within the thirty day period provided by statute, the plaintiff filed a motion for order of compliance pursuant to § 52-351b (c), asking the court to compel the defendant to respond to her interrogatories. The defendant filed an objection to the plaintiff's motion, arguing that it was not required to respond to the interrogatories because the court had not yet disposed of the remaining two counts of the complaint and the plaintiff must wait until a final judgment was rendered in the case before seeking postjudgment discovery pursuant to § 52-351b.

On October 5, 2018, following a hearing, the trial court, *Hernandez, J.*, issued orders sustaining the defendant's objection and denying the plaintiff's motion for an order of compliance. This appeal followed.

On appeal, the plaintiff claims that the trial court improperly denied her motion for an order of compliance regarding her postjudgment interrogatories. In response, the defendant argues, inter alia, that the appeal should be dismissed for lack of subject matter jurisdiction because a final judgment has not yet been rendered in the underlying action. According to the defendant, the court's order denying the plaintiff's motion for compliance is an interlocutory discovery order that satisfies neither prong of the test set forth in *State* v. *Curcio*, supra, 191 Conn. 31, for establishing whether an interlocutory order is final for purposes of appellate jurisdiction. The defendant argues that the plaintiff must wait to appeal until after the trial court has disposed of the remaining two counts of her complaint. In her reply brief, the plaintiff responds that the challenged order is a final judgment and that both prongs of the *Curcio* test are satisfied because the defendant's failure to seek a trial de novo with respect to the arbitration decision effectively terminated a separate and distinct proceeding with respect to the underinsured motorist claim and the court's order precludes her right to obtain the discovery she needs to execute on the judgment. We agree with the defendant.

Unless otherwise provided by law, the jurisdiction of our appellate courts is restricted to appeals from final judgments. See General Statutes §§ 51-197a and 52-263; Practice Book § 61-1; *Cheryl Terry Enterprises, Ltd.* v. *Hartford*, 262 Conn. 240, 245, 811 A.2d 1272 (2002). "The policy concerns underlying the final judgment rule are to discourage piecemeal appeals and to facilitate the speedy and orderly disposition of cases at the trial court level. . . . The appellate courts have a duty to dismiss, even on [their] own initiative, any appeal that [they lack] jurisdiction to hear." (Internal quotation marks omitted.) *Tyler* v. *Tyler*, 151 Conn. App. 98, 103, 93 A.3d 1179 (2014). Accordingly, a final judgment issue is a threshold matter that must always be resolved prior to addressing the merits of an appeal. See *State* v. *Curcio*, supra, 191 Conn. 30. Whether an appealable final judgment has occurred is a question of law over which our review is plenary. See, e.g., *Hylton* v. *Gunter*, 313 Conn. 472, 478, 97 A.3d 970 (2014).

It is axiomatic that "[a] judgment that disposes of only a part of a complaint is not a final judgment." *Cheryl Terry Enterprises, Ltd.* v. *Hartford*, supra, 262 Conn. 246. Accordingly, an appeal challenging an order issued during the pendency of a civil action ordinarily must wait until there has been a final disposition as to all counts of the underlying complaint. "Our rules of practice, however, set forth certain circumstances under which a party may appeal from a judgment disposing of less than all of the counts of a complaint. Thus, a party may appeal if the partial judgment disposes of all causes of action against a particular party or parties; see Practice Book § 61-3; or if the trial court makes a written determination regarding the significance of the issues resolved by the judgment and the chief justice or chief judge of the court having appellate jurisdiction concurs. See Practice Book § 61-4 (a)."[6] (Footnote omitted.) *Cheryl Terry Enterprises, Ltd.* v. *Hartford*, supra, 246. In the present case, neither of these exceptions is applicable.

The complaint in the underlying civil action contains three counts, all of which the plaintiff brought against the sole defendant. The court granted the defendant's motion to resolve count one before turning to the remaining counts of the complaint.[7] Count one subsequently was referred to an arbitrator for resolution under the court's "nonbinding arbitration program." *Allstate Ins. Co.* v. *Mottolese*, 261 Conn. 521, 529, 803 A.2d 311 (2002); see also Practice Book §§ 23-61 through 23-66. The arbitrator issued a decision that became the judgment of the trial court with respect to count one after the defendant failed to make a claim for a trial de novo. See Practice Book § 23-66 (a). Even assuming without deciding that this fully resolved count one and that the defendant effectively has waived any challenge to the merits of the arbitrator's decision or its obligation

to satisfy the judgment rendered on that count, the court nonetheless has not yet resolved the remaining two counts of the complaint. Because the judgment on count one does not dispose of all causes of action in the complaint brought by or against a particular party, the judgment rendered on count one is not final under Practice Book § 61-3. Instead, the judgment with respect to count one falls squarely within the type of judgment addressed in Practice Book § 61-4.

Our determination that the court's denial of the motion to compel compliance with the plaintiff's interrogatories was an interlocutory order does not end our inquiry into whether that ruling was immediately appealable. "In both criminal and civil cases . . . we have determined certain interlocutory orders and rulings of the Superior Court to be final judgments for purposes of appeal. [As set forth in *State* v. *Curcio*, supra, 191 Conn. 30–31, an] otherwise interlocutory order is appealable in two circumstances: (1) [if] the order or action terminates a separate and distinct proceeding, [and] (2) [if] the order or action so concludes the rights of the parties that further proceedings cannot affect them. . . . The first prong of the *Curcio* test . . . requires that the order being appealed from be severable from the central cause of action so that the main action can proceed independent of the ancillary proceeding. . . . If the interlocutory ruling is merely a step along the road to final judgment then it does not satisfy the first prong of *Curcio*. . . . Obviously a ruling affecting the merits of the controversy would not pass the first part of the *Curcio* test. The fact, however, that the interlocutory ruling does not implicate the merits of the principal issue at the trial . . . does not necessarily render that ruling appealable. It must appear that the interlocutory ruling will not impact directly on any aspect of the [action]. . . .

"The second prong of the *Curcio* test focuses on the nature of the right involved. It requires the parties seeking to appeal to establish that the trial court's order threatens the preservation of a right already secured to them and that that right will be irretrievably lost and the [parties] irreparably harmed unless they may immediately appeal. . . . Thus, a bald assertion that [the appellant] will be irreparably harmed if appellate review is delayed until final adjudication . . . is insufficient to make an otherwise interlocutory order a final judgment. One must make at least a colorable claim that some recognized statutory or constitutional right is at risk. . . . In other words, the [appellant] must do more than show that the trial court's decision threatens him with irreparable harm. The [appellant] must show that that decision threatens to abrogate a right that he or she then holds. . . . Moreover, when a statute vests the trial court with discretion to determine if a particular [party] is to be accorded a certain status, the [party] may not invoke the rights that attend the status as a

basis for claiming that the court's decision not to confer that status deprives the [party] of protections to which [it] . . . is entitled. For an interlocutory order to be an appealable final judgment it must threaten the preservation of a right that the [party] already holds. The right itself must exist independently of the order from which the appeal is taken. [If] a [discretionary] decision has the effect of not granting a particular right, that decision, even if erroneous, does not threaten the [party's] already existing rights." (Citations omitted; emphasis omitted; internal quotation marks omitted.) *Hartford Accident & Indemnity Co.* v. *Ace American Reinsurance Co.*, supra, 279 Conn. 225–27; see also *U.S. Bank National Assn.* v. *Crawford*, 333 Conn. 731, 738, 219 A.3d 744 (2019) (discussing second prong of *Curcio* test).

The plaintiff's claim in the present case that the second prong of the *Curcio* test is satisfied does not merit much discussion. The plaintiff argues that she would suffer an irretrievable deprivation of her rights if she were precluded from immediately appealing the court's denial of her motion to compel because she "has no other way to enforce the $19,500 judgment." That argument, however, lacks merit. First, the statutory right denied to the plaintiff by the court's order was not her right to enforce at some later time the monetary judgment, which she retains. Rather, the right that is implicated is her right to compel the defendant to respond to interrogatories at this time, a right that she does not presently hold and one that is subject to the discretion of the court. See General Statutes § 52-351b (granting trial court discretion with respect to imposing remedy for noncompliance). Second, although the court's ruling temporarily impedes her efforts to collect the judgment, it does not threaten to irretrievably deny her a statutory or constitutional right because, even if we dismiss this appeal for lack of jurisdiction, the plaintiff will be able to vindicate her claim, if it remains necessary to do so, in an appeal taken from a subsequent final judgment disposing of the remaining counts or a later denial of her right to conduct postjudgment discovery.

In asserting that the court's order satisfies the first prong of *Curcio*, the plaintiff principally relies on our Supreme Court's opinion in *Presidential Capital Corp.* v. *Reale*, 240 Conn. 623, 633, 692 A.2d 794 (1997). In that case, our Supreme Court characterized the postjudgment discovery procedures under § 52-351b as "separate and distinct" from the underlying action. Id. The plaintiff's reliance on *Presidential Capital Corp.* fails for a number of reasons.

First, although the plaintiff insists on describing the discovery dispute underlying this appeal as "postjudgment discovery," such nomenclature is not entirely accurate because, as already discussed, the action

below remains partially unresolved at this time. Instead, we view the ruling on appeal to be more akin to a ruling regarding an interlocutory discovery dispute. As indicated in *Presidential Capital Corp.*, our Supreme Court routinely has held that there is no right to an immediate appeal from an interlocutory order issued relating to discovery. *Presidential Capital Corp.* v. *Reale*, supra, 240 Conn. 628, citing *Melia* v. *Hartford Fire Ins. Co.*, 202 Conn. 252, 255, 520 A.2d 605 (1987); *State* v. *Grotton*, 180 Conn. 290, 292, 429 A.2d 871 (1980); and *Chrysler Credit Corp.* v. *Fairfield Chrysler-Plymouth, Inc.*, 180 Conn. 223, 226, 429 A.2d 478 (1980).

Second, the plaintiff's reliance on *Presidential Capital Corp.* is misplaced because our Supreme Court concluded that the trial court's postjudgment discovery order in that case was *not* immediately appealable. See *Presidential Capital Corp.* v. *Reale*, supra, 240 Conn. 625–27. Accordingly, it is difficult to divine how that case supports a conclusion that the discovery order in the present case is immediately appealable.

Third, the procedural posture of the present case readily distinguishes it from the final judgment issue decided in *Presidential Capital Corp.* In that case, the plaintiff was attempting to collect the unpaid balance of a final judgment it had obtained against the defendant following a jury trial on a breach of contract claim for failure to pay a commission. Id., 626. After the judgment had been affirmed on appeal, the plaintiff, hoping to unearth undisclosed assets of the defendant, served the defendant's wife and son, who were not parties to the action, with postjudgment interrogatories pursuant to § 52-351b. Id. Although the wife and son answered the interrogatories, they subsequently sought a protective order, pursuant to § 52-351b (d), to preclude a deposition that the plaintiff had sought. Id. The trial court sustained the plaintiff's objection to the issuance of a protective order "and ordered the appellants to submit to an examination by the plaintiff to be conducted before the court." Id.

The wife and son appealed the court's decision, and the Appellate Court dismissed the appeal for lack of a final judgment. Id., 627. The Supreme Court granted certification and affirmed the Appellate Court's judgment, concluding that, "although § 52-351b creates a proceeding that is separate and distinct from the prior adjudication leading to the judgment debt, the denial of a protective order pursuant to § 52-351b (d) does not terminate this statutory proceeding," and, thus, was not a final judgment for purposes of appeal. Id., 633. Thus, *Presidential Capital Corp.* stands for the proposition that an order that permits postjudgment discovery efforts does not *terminate* a separate and distinct postjudgment proceeding.

Unlike the present case, however, the underlying civil action in *Presidential Capital Corp.* had been fully

resolved at the time of the appeal and thus the *only* proceeding before the trial court with respect to the parties was the adjudication of an objection to the plaintiff's attempt to conduct further postjudgment discovery. See id., 625–27. In the present case, two counts of the plaintiff's complaint remain pending. Indeed, a resolution of those counts may have significant impact on the size of the plaintiff's ultimate judgment against the defendant, and, in turn, affect the degree and nature of the postjudgment discovery. In other words, unlike in *Presidential Capital Corp.*, the present discovery dispute remains enmeshed or intertwined with the unadjudicated issues remaining in the action.

Our Supreme Court's decision in *Pease* v. *Charlotte Hungerford Hospital*, 325 Conn. 363, 157 A.3d 1125 (2017), is further illustrative of why the distinction between the present case and the procedural posture of *Presidential Capital Corp.* is important. In *Pease*, the plaintiff brought a medical malpractice action, and a judgment was rendered in favor of the defendant hospital. Id., 365. The hospital was awarded $5965 in expert fees and costs. Id. Months after the judgment was rendered, the hospital filed a motion for contempt, claiming that the plaintiff had not paid the award of costs. Id. The trial court denied the motion for contempt, and the hospital appealed. Id., 366. The plaintiff argued that the appeal should be dismissed for lack of a final judgment. Id., 366–67. The Supreme Court, in rejecting that claim and affirming the judgment, ruled that the challenged order satisfied the first prong of *Curcio*, noting that "both *the underlying litigation* and the ancillary contempt proceedings have terminated [and that] [*t*]*here is no ongoing proceeding or litigation the completion of which the parties must await* . . . ." (Emphasis added.) Id., 368–69. If no additional litigation with respect to the remaining counts of the complaint remained in the present case, then the court's refusal to compel the defendant to respond to the interrogatories arguably would have terminated the only proceeding currently pending before the court. That, however, simply is not the case here.

The plaintiff argues, as she did before the trial court, that § 52-351b, which authorizes a judgment creditor to serve interrogatories on a judgment debtor, only requires the existence of a "money judgment"; there is no express requirement of a "final judgment" in the statute. Even assuming that we agree with the plaintiff's statutory construction, and that a party who has obtained an uncontested monetary judgment on one count of a multicount complaint properly may utilize the discovery procedures set forth in § 52-351b in such circumstances, such a construction simply does not help to resolve whether or when a party that is dissatisfied with the results of such procedures may seek appellate review. Our law is abundantly clear that appellate review must wait until there is a final judgment in the

underlying action *as to all counts of a complaint*, which undisputedly has not yet occurred in the present case. Because the appeal was taken prior to the court rendering a final judgment on all counts of the plaintiff's complaint, the appeal is premature and jurisdictionally defective.

The appeal is dismissed.

In this opinion the other judges concurred.

[1] General Statutes § 52-351b provides in relevant part: "(a) A judgment creditor may obtain discovery from the judgment debtor . . . of any matters relevant to satisfaction of the money judgment. The judgment creditor shall commence any discovery proceeding by serving an initial set of interrogatories . . . on the person from whom discovery is sought. . . . Such person shall answer the interrogatories and return them to the judgment creditor within thirty days of the date of service. . . .

\* \* \*

"(c) On failure of a person served with interrogatories to return, within the thirty days, a sufficient answer or disclose sufficient assets for execution, or on objection by such person to the interrogatories, the judgment creditor may move the court for such supplemental discovery orders as may be necessary to ensure disclosure including . . . an order for compliance with the interrogatories . . . ."

[2] The defendant did not file a motion to dismiss the appeal. The final judgment issue was raised and addressed by the parties for the first time in their appellate briefs. Nonetheless, because the lack of a final judgment is a jurisdictional defect, we must address the issue, regardless of whether it was raised by a motion to dismiss, in a brief, at oral argument, or by this court sua sponte. See *Mac's Car City, Inc.* v. *DiLoreto*, 33 Conn. App. 131, 132, 634 A.2d 1187 (1993).

[3] Section 52-549u authorizes the court, "in its discretion, [to] refer to an arbitrator, for proceedings authorized pursuant to this chapter, any civil action in which in the discretion of the court, the reasonable expectation of a judgment is less than fifty thousand dollars exclusive of legal interest and costs and in which a claim for a trial by jury and a certificate of closed pleadings have been filed. . . ." General Statutes § 52-549u.

[4] General Statutes § 52-549z provides in relevant part: "(a) A decision of the arbitrator shall become a judgment of the court if no appeal from the arbitrator's decision by way of a demand for a trial de novo is filed in accordance with subsection (d) of this section.

\* \* \*

"(d) An appeal by way of a demand for a trial de novo must be filed with the court clerk within twenty days after the deposit of the arbitrator's decision in the United States mail, as evidenced by the postmark . . . ."

[5] Because an arbitrator's decision automatically becomes a judgment of the court if no timely demand for a trial de novo is made, the plaintiff's motion for judgment was unnecessary. General Statutes § 52-549z (a).

[6] Practice Book § 61-3 provides in relevant part: "A judgment disposing of only a part of a complaint, counterclaim, or cross complaint is a final judgment if that judgment disposes of all causes of action in that complaint, counterclaim, or cross complaint brought by or against a particular party or parties. . . ."

Practice Book § 61-4 (a) provides in relevant part: "This section applies to a trial court judgment that disposes of at least one cause of action where the judgment does not dispose of either of the following: (1) an entire complaint, counterclaim, or cross complaint, or (2) all the causes of action in a complaint, counterclaim or cross complaint brought by or against a party. . . .

\* \* \*

"When the trial court renders a judgment to which this section applies, such judgment shall not ordinarily constitute an appealable final judgment. Such a judgment shall be considered an appealable final judgment *only if* the trial court makes a written determination that the issues resolved by the judgment are of such significance to the determination of the outcome of the case that the delay incident to the appeal would be justified, and the chief justice or chief judge of the court having appellate jurisdiction concurs. . . ." (Emphasis altered.)

[7] There is no dispute that the court, at its discretion, had the authority to

proceed in this manner. See General Statutes § 52-205 ("[i]n all cases, whether entered upon the docket as jury cases or court cases, the court may order that one or more of the issues joined be tried before the others"). In so doing, however, the matter remained under a single docket number and the court signaled no intent to sever the case and create two separate and distinct civil actions.

―――――――――――――――――――――――